NEW YORK LIFE INSURANCE CO. *v.* NEWMAN.

1. WITNESSES—PHYSICIAN-PATIENT RELATION—PRIVILEGE FROM DIS-
   CLOSURE—STATUTES.
   - The statutory privilege from disclosure of information received
     by a physician while attending a patient did not exist at
     common law (3 Comp. Laws 1929, § 14216).

2. SAME—PHYSICIAN-PATIENT RELATION—WAIVER OF PRIVILEGE.
   The statutory privilege from disclosure of information received
     by a physician while attending a patient is personal to the
     client or patient and may be waived by him, or, after his
     death, by his legal representative (3 Comp. Laws 1929,
     § 14216).

3. SAME—PHYSICIAN-PATIENT RELATION—PRIVILEGE—INSURANCE.
   Knowledge or information gained by a physician while treating
     an insured person professionally is privileged in a suit on an
     insurance policy (3 Comp. Laws 1929, § 14216).

4. SAME—STATUTORY PRIVILEGE—INFERENCES.
   No adverse inference may be drawn from the fact that a de-
     ceased patient's representative invokes the statutory privilege
     against disclosure by physician of information obtained while
     treating decedent (3 Comp. Laws 1929, § 14216).

5. SAME—STATUTORY PRIVILEGE—SUPPRESSION OF EVIDENCE.
   Party who insists upon right accorded by statute to nondisclosure
     by physician of information he acquired while treating pa-
     tient before latter's death may not be charged with the sup-
     pression of evidence, material or otherwise (3 Comp. Laws
     1929, § 14216).

6. INSURANCE—APPLICATION—STATEMENT AS TO A TEMPORARY IN-
   DISPOSITION.
   The omission to state in an application for a life insurance
     policy that applicant had had a treatment by a physician for
     some temporary indisposition does not avoid the policy.

7. SAME—NONDISCLOSURE OF SERIOUS ILLNESS—APPLICATION—QUESTION OF FACT.

Where there is testimony that the illness, not disclosed by an application for insurance and for which medical aid was sought, was serious, the question of the seriousness becomes one of fact.

8. EVIDENCE—LAY WITNESSES—PHYSICAL CONDITION OF INSURED PRIOR TO REINSTATEMENT.

Testimony of lay witnesses in suit to cancel a life insurance policy after death of insured as to decedent's physical condition before time of reinstatement was admissible as to what they saw and knew unless it was something out of the common course of general information and experience, or unless questions presented involved medical knowledge beyond that of the ordinary unprofessional person.

9. INSURANCE—APPLICATION FOR REINSTATEMENT—KNOWLEDGE OF ILLNESSES—EVIDENCE.

In insurer's suit to cancel life insurance policy, reception of testimony of lay witnesses as to nature of insured's work, his physical appearance and recreational activities after visit to a doctor within two years previous to application for reinstatement, presented without objection, raised a question of fact as to whether he had given false answers to questions relative to whether he had had any illnesses or diseases or had been examined by a physician therefor within such period where widow testified the visit was for a routine check-up.

10. SAME—CANCELLATION OF POLICY—FRAUD—REINSTATEMENT—EVIDENCE.

In insurer's suit to cancel life insurance policy because of alleged fraud on part of insured in procuring reinstatement, record failed to disclose insured had made any attempt to deceive the insurer or knew that he had any serious illness.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted April 3, 1945. (Docket No. 12, Calendar No. 42,944.) Decided May 14, 1945. Rehearing denied June 29, 1945.

Bill by New York Life Insurance Company against Hattie E. Newman to have decree that reinstatement of life insurance policy was obtained

by fraud. Decree for defendant. Plaintiff appeals. Affirmed.

*Armstrong, Weadock, Essery & Helm (Richard G. Eubank,* of counsel), for plaintiff.

*Butzel, Levin & Winston (Chris M. Youngjohn,* of counsel), for defendant.

Sharpe, J. Plaintiff, New York Life Insurance Company, filed a bill in chancery to cancel a life insurance policy and to restrain an action at law commenced by defendant.

The record shows that on July 15, 1938, a policy of insurance was issued on the life of Meyer Newman in the sum of $3,000 payable to Hattie E. Newman, his wife and defendant herein; that on July 15, 1940, the policy lapsed by reason of default in payment of premium; and that on August 20, 1940, the insured made written application to plaintiff insurance company for reinstatement of the policy. In the application for reinstatement, the following questions were asked and answers given.

"1. Are you now, to the best of your knowledge and belief, in the same condition of health as you were when this policy was issued? (If not, give details.) Ans. Yes.

"2. Within the past two years have you had any illnesses, diseases or bodily injuries or have you consulted, or been examined or treated by any physicians or practitioners? (If so, give full details, including nature, date, and duration of each illness, disease or injury, the name of each physician or practitioner, and the dates of and reasons for consultations, examination or treatment.) Ans. No."

The insured also stated:

"I hereby certify that the foregoing answers are full, complete and true, and agree that the company

believing them to be true shall rely and act thereon.''

The policy was reinstated on August 23, 1940. On May 14, 1941, Meyer Newman had his first heart attack and was confined to a hospital for about a month. He died August 24, 1941. Proofs of death were submitted to the insurance company by the beneficiary and additional information was sought by the company. Mrs. Newman, the beneficiary, authorized Dr. Vogel and Providence Hospital to furnish this additional information, which indicated that Meyer Newman had had heart trouble for some time; and that he had been examined by Dr. Vogel contrary to Mr. Newman's representation in his answer to question number 2 of the reinstatement application.

Upon receiving this information the insurance company rescinded the policy. Defendant, Hattie Newman, brought an action at law in the circuit court of Wayne county, while the present suit in equity is for the purpose of enjoining the action at law and for a decree cancelling the policy.

During the trial, defendant claimed privilege and refused to allow the doctor or hospital librarian to testify concerning the information obtained incident to the doctor's professional relation with the insured. Defendant produced a number of witnesses who testified that for several years prior to May, 1941, deceased looked fine, worked well and acted normally.

The trial court filed a written opinion in which he said:

''The undisputed and credible evidence offered by the defendant discloses that prior to the visit to Dr. Vogel and subsequently the insured evidenced no signs of illness; that he continued his business and creational (recreational) activities during the time

that the policy was in force and up to the time of his last illness; that he followed a strenuous and arduous business life which disclosed a handling of merchandise in the store that he supervised; that in his home he shoveled coal, ashes, and snow when the occasion required and went up and down the stairs in his home daily in performance of manual duties; that he equally engaged in arduous activities for charitable purposes and played golf frequently. There was apparently no change in his physical appearance nor anything in his conduct about his daily life which would cause a lay person or the defendant, his widow, who maintained close observation, to doubt but that he considered himself well, strong, and healthy and conducted himself accordingly; nor does the proof indicate in the slightest degree that he knew or suspected that he might be suffering from some infirmity.  *  *  *

"The testimony in the case at bar does not disclose any condition or ailment of the insured of such a nature as to have a material bearing upon the truth or falsity of his answer to the second question, and as stated in the *Palen Case (Polish Roman Catholic Union of America* v. *Palen,* 302 Mich. 557):

" 'That the insured made false statements in denying that he had any periodic health examinations and in stating that he was "now in good health" when the application was signed. The admissible evidence tends to indicate the truthfulness, rather than falsity, of these statements. The dearth of any proof of serious illness in the case at bar readily distinguishes this case from the facts in *Wohlfeil* v. *Bankers Life Co.,* 296 Mich. 310.'  *  *  *

"It is fair to conclude from the evidence here adduced that the deceased went to Dr. Vogel for a routine physical check-up, as stated by the defendant, and equally by the doctor himself. The question submitted should be answered in the negative."

Subsequently, an order was entered dismissing plaintiff's bill of complaint. Plaintiff appeals and

urges that the trial court committed error in holding that no adverse inference may be drawn from the fact that the beneficiary suppressed material evidence within her control.

Section 14216, 3 Comp. Laws 1929 (Stat. Ann. § 27.911), provides:

"No person duly authorized to practice medicine or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon."

The rule of evidence in the above statute did not exist at common law. *Campau* v. *North*, 39 Mich. 606 (33 Am. Rep. 433). The privilege is personal to the client or patient and may be waived by him, or, after his death, by his legal representative. *Fraser* v. *Jennison*, 42 Mich. 206. Under the above section of the statute, knowledge or information gained by treating an insured person professionally is privileged in a suit on an insurance policy. *McKinney* v. *Liberty Life Insurance Company of Illinois*, 263 Mich. 490. No adverse inference may be drawn from the fact that deceased's representative invokes the privilege of the statute. *Aetna Life Insurance Company of Hartford, Conn.*, v. *Harper*, 293 Mich. 385. And we hold that one who insists upon a right given by this statute may not be charged with the suppression of evidence material or otherwise.

It is also urged that the court was in error in failing to hold that the burden of proof is upon the beneficiary to prove that a false statement is not material.

Section 12444, 3 Comp. Laws 1929 (Stat. Ann. 1943 Rev. § 24.280), provides:

"The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

In *Brown* v. *Metropolitan Life Insurance Co.*, 65 Mich. 306 (8 Am. St. Rep. 894), we held that the omission to state a treatment by a physician for some temporary indisposition does not avoid the policy. See, also, *Blumenthal* v. *Berkshire Life-Insurance Co.*, 134 Mich. 216 (104 Am. St. Rep. 604), and cases cited therein. But, where there is testimony that the illness, not disclosed by the application and for which medical aid was sought, was serious, the question of the seriousness becomes one of fact. *Rhode* v. *Metropolitan Life-Insurance Co.*, 132 Mich. 503. In *Rickert* v. *Travelers Ins. Co. of Hartford, Conn.*, 282 Mich. 538, we said: "If the illness for which the doctor was consulted was not serious, the failure to disclose such attendance is not such a material misrepresentation as. to void the policy."

In the case at bar the record shows that deceased had permitted his policy to lapse. He made application for reinstatement in which he answered a question stating that he had not had any illness or been treated by a doctor during the past two years. This statement was untrue to the extent that deceased had consulted a physician during this two-year period. During the trial Mrs. Newman, the beneficiary, went forward with evidence to show that the cause for which deceased consulted a physician was not for any illness, but for a routine check-up. Several lay witnesses testified as to the nature of deceased's work, his physical appearance and recreational activities.

It is urged by the insurance company that lay witnesses could not testify to matters involving medical knowledge beyond that of the ordinary unprofessional person. In *DeGroot* v. *Winter,* 265 Mich. 274, we held that the testimony of lay witnesses describing a person's physical condition is admissible as to what they see and know unless it is something out of the common course of general information and experience, or unless questions presented involve medical knowledge beyond that of the ordinary unprofessional person.

In *Wohlfeil* v. *Bankers Life Co.,* 296 Mich. 310, we said:

"In reaching our conclusion in this case we are mindful that after defendant had made a showing that within the five-year period next preceding his application for reinstatement the insured had been in the hospital at Ann Arbor and that he had been treated by Doctor Hill, the burden was then upon plaintiff to show that any treatment the insured received was for. some ailment which did not tend *seriously* to weaken or undermine the insured's health. *Bullock* v. *Mutual Life Ins. Co.,* 166 Mich. 240. But on this phase of the case there was testimony in behalf of the plaintiff that during the period in question the insured had worked continuously, that at the time he was reinstated he was doing certain work of a heavy or laborious character, that he was not on a diet but was subsisting on the same food as the other members of his family without there being any special preparation of his food, and that the insured's manner of walking, which some thought indicated a decline in his physical condition, was due to an accident previously suffered and which resulted in deformity and broken bones in one of the insured's feet. Taken as a whole, the record presented an issue of fact for jury decision, regardless of the burden of proof in the particular noted being upon plaintiff."

Under the above authority it was not error to permit lay witnesses to testify that after deceased visited Dr. Vogel on February 28, 1940, deceased continued his business, social and recreational activities as he had always done; that he went up and down stairs, unloaded, packed and stored merchandise, shoveled coal and ashes and went on camping and fishing trips. Moreover, there was no objection to this evidence when admitted. Such evidence presented a question of fact as to whether insured, in applying for reinstatement, gave a false answer to questions as to whether or not within the preceding two years he had any illnesses or diseases or had been examined by a physician for any disease or illness.

Our examination of the record fails to disclose that deceased made any attempt to deceive the insurance company, or knew that he had any serious illness. We find no reasons for reaching a conclusion different from that of the trial judge.

The decree of the court dismissing plaintiff's bill of complaint is affirmed, with costs to defendant.

Starr, C. J., and North, Wiest, Bushnell, Boyles, and Reid, JJ., concurred. Butzel, J., did not sit.