EWER *v.* DIETRICH.

1. DISCOVERY—COURT RULES.
    The purpose of the court rules relative to discovery is to provide accurate information in advance of trial as to the actual facts and circumstances of a controversy rather than aid in their concealment (Court Rules Nos 40, 41 [1945]).

2. SAME—DISCRETION OF COURT.
    It was not an abuse of discretion for trial court to order defendant to answer questions relative to his experience in boat building during pretrial discovery proceeding, where the dec-

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 17 Am Jur, Discovery and Inspection § 2.
[2] 17 Am Jur, Discovery and Inspection § 47.

laration in action to recover damages resulting from explosion of gasoline-motor powered boat alleged faulty construction of the boat (Court Rules Nos 40, 41 [1945]).

3. SAME—COURT RULES.

Court rules permitting discovery were promulgated for the attainment of improvements in practice, the expediting of the decisions of causes and the remedying of such abuses and imperfections as may be found to exist in the practice, such as inadequacies of pleadings alone for the formulation of issues (Court Rules Nos 40, 41 [1945]).

4. SAME—DISCRETION OF COURT—WARRANTY—BOATS.

It was not an abuse of discretion for trial court in action against seller of gasoline-motor powered boat to require latter in discovery proceeding to answer question as to whether it was his position that plaintiff had assumed the responsibility for the boat being in accordance with the warranty of defendant's contract, where the issue of assumption of responsibility for the warranty alleged was an issue upon which the case could conceivably turn and parties should not proceed in ignorance of the other's position with respect thereto, it not being conceded that such information was not necessary to proper preparation for trial (Court Rules Nos 40, 41 [1945]).

Appeal from Ingham; Coash (Louis E.), J. Submitted February 28, 1956. (Calendar No. 46,000.) Decided September 4, 1956.

Case by Ray A. Ewer, for himself and as assignee of John Garman, and Newark Fire Insurance Company, a New Jersey corporation, subrogee of Ray A. Ewer, against Simeon R. Dietrich for personal injuries and property damage resulting from gasoline-vapor explosion in boat. On discovery proceedings by him instituted defendant was ordered to answer certain specific questions. Defendant appeals from such order. Affirmed.

*Pierce & Planck,* for plaintiffs.

*Sigler, Anderson & Carr,* for defendant.

Smith, J.  This case relates to discovery.  Defendant Simeon R. Dietrich has appealed in the nature of mandamus (upon leave granted) from an order of the circuit court requiring him to answer certain specific inquiries.

The question comes up in this way:

On July 17, 1952, plaintiffs Ray Ewer, individually and as assignee of John Garman, and Newark Fire Insurance Company, as subrogee of Ray Ewer, filed a declaration in 3 counts alleging (1) a breach of implied warranty; (2) negligence resulting in injury to plaintiff and (3) negligence resulting in injury to plaintiff's assignee, John Garman, all arising out of a boat explosion.  The boat was described as a 32-foot Eddy Marine custom-built cruiser.  It had been sold by defendant to plaintiff Ewer.

The declaration asserts that the sale was made pursuant to a written contract wherein defendant "agreed to complete said boat and transfer and deliver it to plaintiff Ewer fully equipped, ready for launching and for service in the water, and to do whatever might be necessary during the completion and commissioning of said boat 'to insure a complete and workmanshiplike job.'"  Upon completion plaintiff took delivery of the boat.  The accident out of which the suit arises occurred on July 11, 1949.  The boat had taken on a load of gasoline for fuel.  About a half hour thereafter, noticing an odor of gasoline in the boat, plaintiff started the electric motor of the bilge blower fan in order to ventilate the bilges.  An explosion followed, as a result whereof it is asserted that plaintiff Ewer and his assignor Garman were injured.

Defendant on August 26, 1952, filed a motion described by the court as "asking for a discovery proceeding under Michigan Court Rules Nos 40 and 41 (1945)."  It was stated therein that defendant had been advised by counsel and believed that discovery

was "necessary to enable him to answer plaintiff's declaration filed herein and to prepare for trial." The motion was granted, over plaintiff's objections. An order was thereupon entered. It provided for the taking of testimony of plaintiffs Ewer and Garman by deposition with reference to the "facts and circumstances, events and happenings in relation to the operation and management of said boat and all other relevant facts following the purchase of said boat by plaintiff Ewer * * * and all facts constituting the *res gestae*," and further provided that defendant Dietrich "submit to examination" at the time designated for plaintiffs' depositions.

It was on the taking of defendant's deposition that the questions herein complained of arose. With respect to certain questions posed to him, defendant was instructed by his counsel not to answer. Plaintiffs thereafter moved the court for an "order defining explicitly the subject matter of the continued deposition" of defendant. It will aid in understanding the issues presented if reference is made to the record of proceedings upon the hearing on said motion. The speaker is counsel for plaintiffs.

"On the examination of Mr. Dietrich, which I won't bother to read in full, although it only occupies about 12 pages up to the point where we gave up and concluded that we would have to get a more explicit definition from the court of the subject matter of his examination, one question on page 4 was:

"*Q*. Now, how did you happen to go into the boat-building business at that time?

"Mr. Anderson objected to the question and instructed his client not to answer.

"Now, we think that is material. If, as I believe, the proofs will indicate Mr. Dietrich went into the boat-building business in order to salvage a $30,000 investment that he had made by way of a loan to the Eddy Shipbuilding Company which subsequently

went bankrupt, if that is the way he got into the boat-building business, we consider that material. It certainly would bear on his whole approach to the completion of these boats that he took over, and that of Ewer in particular. He had had no previous experience in the boat-building business. That much appears affirmatively. So we think that question should be answered.

"Another question on page 6:

"Q. Let me rephrase the question. This boat was one of several boats that you took over in a partial state of completion was it not?

"Mr. Anderson made the same objection and instructed Dietrich not to answer.

"Now, if we can't ask about that, what can we ask about?

"And then, on the next page, page 7, Mr. Dietrich answered:

"A. I would not say just how far along it actually was, but I know that Ray had his man up on the boat and was trying to speed the thing along to get it out into the water, and just how far along they were with it I do not know.

"Now, the court will notice that there is an intimation that Mr. Ewer had taken charge of the completion of this boat. That is the inference.

"And then a little further along, on page 8, I put the question:

"Q. You would not know whether it was under Ray's direction or not, would you?
meaning that he wasn't there personally and would be depending on hearsay. The answer was:

"A. Well, he was the one that took over and he is the one who told the boys what to do.

"He didn't answer my question but he repeated the inference clearly.

"Then a little further along, on page 12, I put this question:

"Q. Is it your position, Mr. Dietrich, that Mr. Ewer assumed the responsibility for this boat being in accordance with the warranty of your contract?

"That question we claim was clearly competent, not only in an attempt to define the issues in the case for the matter of trial and what to get ready for in the preparation for trial."

The court, after hearing argument of respective counsel, stated, in part, as follows:

"Furthermore, there are a lot of other cases here that state the purpose of discovery is to aid the court in the shortening of a trial as much as possible.

"I think that the questions that were asked would enable the plaintiff to properly prepare his case, as Mr. Pierce has stated. On the question, 'How did you happen to go into the boat business?', now, if it is necessary to bring in the bankruptcy proceedings from Detroit it would be expensive and it would take a lot of time, which would lengthen the trial, and I think that that would be a question that could be determined and disposed of beforehand, as well as the other, 'Was the boat you took over one of several boats you took over?', and the other 2, 'Is it your position' and so forth. I haven't got them written down here as you read them. I am just referring you to them.

"So he may answer those questions.

"Mr. Anderson, you have stated that they know the answers to them already. If that is true, we are making a record here, and if that is true, then certainly Mr. Dietrich should not object to answering if you claim that they know them already. Maybe they do and maybe they don't. But I think it would expedite the trial; it would help in preparing a proper pleading, so when the matter is set for trial it can be carried along with dispatch and not be lengthened and carried out for a long period of time going over a lot of matters that could have been disposed of earlier.

"So I will grant the petition or motion."

An order, accordingly, was entered requiring:

"That upon the resumption of the deposition of

the defendant herein, he be required to answer explicitly the following questions:

"1. How did you happen to go into the boat-building business in the spring of 1949?

"2. The boat which you sold to Mr. Ewer was one of several boats that you took over in a partial state of completion, was it not?

"3. Is it your position Mr. Dietrich, that Mr. Ewer assumed the responsibility for this boat being in accordance with the warranty of your contract?

"4. Any other questions relevant to the subject matter of the foregoing 3 questions."

The proceedings below having been planted on Court Rules Nos 40 and 41 (1945), our opinion will be limited thereto. There is no need, at this late date, to justify the practice and objectives of liberal pretrial discovery procedure. It may be of interest to note, however, that long antedating the modern efforts for complete discovery, views of a similar nature had been voiced by thoughtful judges, among them William Howard Taft, then a judge of the superior court of Cincinnati, who said: "There is no objection that I know, why each party should not know the other's case." *Shaw* v. *Ohio Edison Installation Co.*, 9 Ohio Dec 809, 812; Ragland, Discovery Before Trial, pp 50, 51. In *Hallett* v. *Michigan Consolidated Gas Co.*, 298 Mich 582, 592, we stated the underlying principle of the discovery process in somewhat similar terms:

"Comparatively recent procedure for compelling discovery of the facts and circumstances of a controversy in advance of joining issue or in advance of trial is well established. It is somewhat along the same line as the statute providing for calling opposite party for cross-examination, which was an innovation against the common law. The recent trend and purpose of statutes and court rules is to provide accurate information in advance of trial as to the actual facts and circumstances of a contro-

versy. We have already said such rules must be liberally construed. They should promote the discovery of the true facts and circumstances of a controversy, rather than aid in their concealment."

In the case at bar the first 2 questions quoted above, relating to the circumstances under which defendant had entered the boat-building business, his experience, and thus, presumably, his competence thereat, were clearly relevant and material, particularly in view of the allegations in the declaration that the accumulation of gasoline vapor in the bilges was caused by careless and improper construction. It was alleged that certain openings in the gasoline tanks themselves were not, as they should have been, "effectively and hermetically sealed against the escape of gasoline and gasoline vapor into the bilges of the boat." There was no abuse of discretion in the trial court's order with respect to these questions.

With respect to the third question, however, considerations somewhat more complex are involved. The main thrust of defendant's objection to this question is variously phrased, but the statements reduce to the contention that it will force the defendant to disclose "the theory of his defense." This, it will be noted, goes beyond a mere factual disclosure. Are the legal positions of the parties with respect to certain of the facts (here, as to the alleged warranty) a proper matter for disclosure in advance of trial? The bearings of the claims of the parties upon a narrowing and clarification of the issues would seem obvious. As we said in *Vincent v. Van Blooys*, 263 Mich 312, 314:

"Aside from its advantage to a party in discovering the opponent's claim, the rule has a public purpose which should be served in its interpretation, arising from reducing the time of the trial by narrowing the issues, obtaining admissions of fact, fixing the claims of the parties when the incidents

are fresh in their minds, and otherwise fostering accuracy and celerity of trial, and also from inducing settlements, which are made more easy when the respective claims are known. A rather liberal construction will obviate the necessity for taking the time of the court in haggling over the limitations of the examination. Experience will disclose the evils which may develop and suggest the remedy."

The court thereupon reversed the order vacating order of discovery, so, in part, that defendant might "ascertain the precise claims of the plaintiffs." The court's reasoning, and its holding, are equally applicable to the situation before us involving the legal positions of the parties and their claims with respect thereto.

While it may be questionable whether plaintiffs need or desire additional information in order to plead further (a declaration having been filed) we cannot conclude that the information is not necessary to proper preparation for trial. Court Rule No 41, together with other like remedial rules of procedure, was (*Tomlinson* v. *Tomlinson*, 338 Mich 274, 276) promulgated for the attainment of " 'improvements in the practice,' " among which were the " 'expediting of the decisions of causes' " and the " 'remedying of such abuses and imperfections as may be found to exist in the practice.' " Prominent among such imperfections were the inadequacies of the pleadings alone for the formulation of issues. Hence, the pretrial and discovery procedures, one of the primary purposes of which is the simplification and clarification of issues. Under the circumstances, and in the light of these principles, we cannot hold that the trial court abused its discretion. The assumption of responsibility for the warranty alleged is an issue upon which the case could conceivably turn and it will not expedite trial of the case (or reduce the expense of preparation

therefor) if the parties must proceed to trial in ignorance of the other's position with respect thereto.

Affirmed.   Costs to appellees.

Dethmers, C. J., and Sharpe, Boyles, Kelly, and Black, JJ., concurred.

Carr, J., did not sit.

Edwards, J., took no part in the decision of this case.