DOMAKO v ROWE

Docket No. 89257. Argued April 2, 1991 (Calendar No. 3). Decided
September 6, 1991. Rehearing denied 439 Mich 1202.

Carol J. Domako and Thomas Domako brought a medical mal-
practice action in the Wayne Circuit Court against Joseph
Rowe, M.D., and others, alleging negligence and loss of consor-
tium. A mediation award was accepted by the plaintiffs, but
rejected by the defendant. The court, Marianne O. Battani, J.,
entered judgment following a jury verdict for the defendant
and denied with prejudice the plaintiffs' motion for judgment
notwithstanding the verdict or for a new trial. The Court of
Appeals, MACKENZIE, P.J., and DOCTOROFF and T. G.
KAVANAGH, JJ., affirmed in an opinion per curiam (Docket No.
112776). The plaintiffs appeal, limited to whether the physician-
patient privilege was violated when defense counsel conducted
an ex parte interview with the plaintiff's treating physician.

In an opinion by Chief Justice CAVANAGH, joined by Justices
LEVIN, BRICKLEY, BOYLE, RILEY, and GRIFFIN, the Supreme
Court held:

Defense counsel's ex parte interview of the plaintiff's treat-
ing physician was proper because the physician-patient privi-
lege had been waived by lack of timely assertion. After the
privilege is waived in a malpractice action, each party is
entitled to equal access to relevant information, subject to
restrictions against annoyance, embarrassment, oppression, or
undue burden or expense.

1. Parties in an action may obtain discovery of any matter
not privileged that is relevant to the subject matter involved.
In an action for malpractice, the physician-patient statute
provides for waiver of the physician-patient privilege where the
patient offers a physician as a witness. Similarly, the court
rules also provide for waiver. The purpose underlying the
privilege is protection of the confidential nature of the physi-
cian-patient relationship and encouragement of full disclosure
by the patient of symptoms and conditions. The purpose of

REFERENCES

Am Jur 2d, Witnesses §§ 270, 272, 274.
See the Index to Annotations under Physician-Patient Privilege.

providing for waiver is to prevent the suppression of evidence by the party seeking compensation. Assertion of the physician-patient privilege is permitted at various stages of the proceedings. However, the court rules permit waiver to be implied where there is failure of timely assertion. In this case, the defendants sought medical information, and the plaintiffs authorized release of the information without asserting the privilege. MCR 2.314(B)(1) provides that if the privilege is not asserted in such circumstances, it is waived for purposes of the action. Thus, the court correctly determined that the privilege had been waived.

2. Rules of discovery are to be liberally construed to further the ends of justice by simplifying and clarifying the issues and by providing accurate information in advance of trial. Ex parte interviews appear to advance these aims, providing there has been a waiver of the physician-patient privilege. No party to litigation has anything resembling a proprietary right to any witness' evidence; absent a privilege, no party is entitled to restrict an opponent's access to a witness. While a physician is different from an ordinary witness as a result of the confidential nature of the physician's potential testimony, that confidentiality is adequately preserved by the physician-patient privilege. Once the privilege is waived, there are no sound legal or policy grounds for restricting access to the physician-witness. Although the court rules are silent with regard to informal methods of discovery, prohibition of all ex parte interviews would be inconsistent with the purposes of providing equal access to relevant evidence and efficient, cost-effective litigation.

Justice MALLETT, concurring, stated that in the absence of notice by opposing counsel of an ex parte interview of a party's treating physician, the party may not be able to establish proper parameters for questioning through a protective order. To ensure absolutely the party's ability to secure a protective order, the party seeking the ex parte interview, at the very least, should provide notice. Such a requirement would not frustrate discovery and would provide a firm basis for mutual expectation of professionalism.

Affirmed.

184 Mich App 137; 457 NW2d 107 (1990) affirmed.

EVIDENCE — PHYSICIAN-PATIENT PRIVILEGE — MALPRACTICE — EX
    PARTE INTERVIEWS.

An ex parte interview by defense counsel in a malpractice action of the plaintiff's treating physician is proper where the physician-patient privilege is waived by lack of timely assertion;

after the privilege is waived, each party is entitled to equal access to relevant information subject to restrictions against annoyance, embarrassment, oppression, or undue burden or expense (MCR 2.314[B][1]).

*Fieger & Fieger, P.C.* (by *Geoffrey N. Fieger* and *Dennis M. Fuller*), for the plaintiffs.

*Schureman, Frakes, Glass & Wulfmeier* (by *J. Kelly Carley*) for the defendants.

Amici Curiae:

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Susan Healy Zitterman* and *Linda M. Garbarino*), for Michigan Hospital Association, Michigan Society of Hospital Attorneys, and Michigan Society of Hospital Risk Management.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *David J. Cooper* and *Rosalind Rochkind*), for Association of Defense Trial Counsel.

*Kerr, Russell & Weber* (by *Richard D. Weber, Catherine B. Edwards,* and *Patrick J. Haddad*) for Michigan State Medical Society.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Morton E. Schneider* and *Charles Chomet*) for Michigan Trial Lawyers Association.

*Sullivan, Ward, Bone, Tyler, Fiott & Asher, P.C.* (by *Michelle A. Thomas*), for William Beaumont Hospital, Henry Ford Health System, Lansing General Hospital, Bronson Hospital, Butterworth Hospital, Mid Michigan Regional Medical Center, and Blodgett Hospital.

*Plunkett & Cooney, P.C.* (by *John P. Jacobs*), for Michigan Defense Trial Counsel, Inc.

CAVANAGH, C.J. We granted leave in this medical malpractice case to determine whether the physician-patient privilege was violated when defense counsel conducted an ex parte interview with the injured plaintiff's treating physician. We have concluded that no violation occurred, and we affirm the judgment of the Court of Appeals.

I

Joseph Rowe, M.D., performed a total abdominal hysterectomy and a right salpingo-oophorectomy (removal of fallopian tube and ovary) on Carol Domako. There was a large fibroid tumor on the lower anterior of Domako's uterus. Domako was discharged from the hospital on January 14, 1985, and shortly thereafter began experiencing urinary incontinence. The cause was later determined to be a vesico-vaginal fistula, an abnormal passage between the bladder and the vagina resulting from a hole in the bladder. Dr. Rowe referred Domako to Dr. Abbassian, a urologist, for repair of the fistula. Dr. Abbassian successfully repaired the fistula during surgery performed on April 17, 1985. After the second postoperative visit, Domako did not see Dr. Abbassian again.

On February 21, 1986, Domako filed a suit, alleging negligence by Dr. Rowe; Domako's husband raised a loss of consortium claim. The liability issue concerned whether Dr. Rowe had perforated the bladder during the hysterectomy, thereby causing the fistula, or whether the fibroid tumor pressing against the surface of the bladder caused a depletion of blood and a subsequent weakening of the bladder wall. In the initial stage of discovery, defense counsel subpoenaed relevant medical records. The request for Dr. Abbassian's medical records was made under MCR 2.310. Domako signed the authorization forms, and the records

were received. Plaintiff made no objection to the request. Defense counsel then met ex parte with Dr. Abbassian on April 13, 1987. At that meeting Dr. Abbassian explained his treatment and that he believed the cause of the fistula was ischemic necrosis, meaning that it had not been caused by any negligent actions by Dr. Rowe during the hysterectomy. Dr. Abbassian agreed to testify to that opinion at trial.

Mediation of the matter occurred on August 4, 1987, and the defendants set forth in their mediation summary that Dr. Abbassian would be giving opinion testimony regarding the cause of the fistula. The plaintiffs accepted the mediation evaluation of $35,000, but Dr. Rowe rejected it. On November 19, 1987, the plaintiffs filed their witness list which included Dr. Abbassian. The defendants also included Dr. Abbassian on their witness list, declaring him an expert witness since they intended to elicit opinion testimony regarding the cause of the fistula. Again, no objection was received from the plaintiffs.

On April 6, 1988, five days before trial was set to begin, the defendants were scheduled to conduct a de bene esse deposition of Dr. Abbassian because the doctor had a heart condition and they sought to avoid the stress of testifying in person during trial. The plaintiffs did not object in advance. At the deposition, however, the plaintiffs' attorney stated that he had just become aware of the ex parte contact between Dr. Abbassian and the defendants, and he immediately asserted the physician-patient privilege. The plaintiffs' counsel accused Dr. Abbassian of betraying the physician-patient privilege and threatened a lawsuit for breach of privilege. Dr. Abbassian then refused to continue, and the deposition was adjourned.

Defense counsel filed an emergency motion to bar the plaintiffs from introducing any evidence at

trial of Domako's medical condition[1] or, alternatively, for a determination that Domako had waived any physician-patient privilege. At the hearing on the motion, plaintiffs' counsel stated that he did not object to Dr. Abbassian's testimony except with regard to that testimony concerning the standard of care. The trial court held that the plaintiff had waived the physician-patient privilege and that Dr. Abbassian could testify about his repair and the cause of the fistula.

During trial, the plaintiffs called Dr. Abbassian as a witness, and he testified that the fistula had been caused, not by any negligence of Dr. Rowe, but by the large fibroid tumor pressing against the plaintiff's bladder causing decreased blood flow and deterioration of the tissue. The jury returned a verdict of no cause of action in favor of the defendants. The trial court denied with prejudice the plaintiffs' motion for judgment notwithstanding the verdict and, alternatively, for a new trial. The Court of Appeals affirmed, 184 Mich App 137; 457 NW2d 107 (1990). The Court of Appeals also issued an order, pursuant to Administrative Order No. 1984-2, which certified that the opinion was in conflict with *Lawrence v Bay Osteopathic Hosp, Inc,* 175 Mich App 61; 437 NW2d 296 (1989), and *Jordan v Sinai Hosp of Detroit, Inc,* 171 Mich App 328; 429 NW2d 891 (1988).

This Court granted leave to appeal, limited to whether the physician-patient privilege was violated when defense counsel conducted the ex parte interview with the plaintiff's treating physician. A number of interested groups were permitted to appear as amici curiae in this matter.

---

[1] MCR 2.314(B)(2) mandates that if a party asserts the physician-patient privilege regarding medical information, that party may not thereafter present any evidence relating to the party's medical or physical condition.

II

The process of discovery is extensively addressed by the Michigan Court Rules of 1985. The scope of discovery is outlined in MCR 2.302(B)(1) which provides: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." Since any relevant, nonprivileged information is discoverable, and plaintiffs do not contest the relevance of the information sought from Dr. Abbassian, the information could only be shielded from discovery on the basis of privilege.

The applicable privilege is the physician-patient privilege created in this state by statute. At the time of the proceedings in this case, MCL 600.2157; MSA 27A.2157, provided:

> No person duly authorized to practice medicine or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon: Provided, however, That in case such patient shall bring an action against any defendant to recover for any personal injuries, or for any malpractice, if such plaintiff shall produce any physician as a witness in his own behalf, who has treated him for such injury, or for any disease or condition, with reference to which such malpractice is alleged, he shall be deemed to have waived the privilege hereinbefore provided for, as to any or all other physicians, who may have treated him for such injuries, disease or condition . . . .[2]

The statute provides protection for information

_____
[2] This statute was amended effective September 1, 1989. The basic substance of the privilege remains unchanged other than it now expressly allows disclosure "as otherwise provided by law . . . ."

relayed by the patient to the physician, and it also provides for a waiver of the privilege when the plaintiff "produce[s] any physician as a witness in his own behalf" in a malpractice action. Similarly, the Michigan Court Rules offer protection for medical information:

> When a mental or physical condition of a party is in controversy, medical information about the condition is subject to discovery under MCR 2.310 to the extent that . . . the party does not assert that the information is subject to a valid privilege. [MCR 2.314(A)(1)(b).]

Just as in the privilege statute, the court rules provide for the waiver of the physician-patient privilege. MCR 2.314(B)(1) clarifies the procedure by which the patient waives the privilege: "The privilege must be asserted in the party's written response under MCR 2.310. A privilege not timely asserted is waived in that action . . . ." The Staff Comment declares that this section requires a party to decide at the discovery stage whether to assert the privilege. Unlike other forms of litigation, a case involving medical malpractice cannot proceed without evidence of the physical or mental condition of the plaintiff. Therefore, requiring the plaintiff to decide whether to assert the privilege at the discovery stage, rather than at trial, promotes efficient use of judicial resources by fostering an early resolution of this issue.

The purpose behind the physician-patient privilege is to protect the confidential nature of the physician-patient relationship and to encourage the patient to make a full disclosure of symptoms and conditions. *Gaertner v Michigan,* 385 Mich 49, 53; 187 NW2d 429 (1971); *Schechet v Kesten,* 372 Mich 346, 351; 126 NW2d 718 (1964); 81 Am Jur 2d, Witnesses, § 231, p 262. The purpose of provid-

ing for waiver is to prevent the suppression of evidence. *La Count v Von Platen-Fox Co*, 243 Mich 250, 253-254; 220 NW 697 (1928) ("waiver . . . [is] to prevent the suppression of evidence by one seeking aid of the law in securing compensation for a personal injury"). An attempt to use the privilege to control the timing of the release of information exceeds the purpose of the privilege and begins to erode the purpose of waiver by repressing evidence. Both consequences are anathema to the open discovery policy of our state. The statute and the court rule both allow waiver, thus striking an appropriate balance between encouraging confident disclosure to one's physician and providing full access to relevant evidence should a charge of malpractice follow treatment.

The rules in Michigan allow the assertion of the physician-patient privilege at various stages of the proceedings.[3] The court rules do permit, however, an implied waiver when the patient fails to timely assert the privilege. MCR 2.314(B)(1) requires that the party assert the privilege "in the party's written response under MCR 2.310," and MCR 2.302(B)(1)(b) requires the assertion of the privilege "at the deposition." The penalty for not timely asserting the privilege, under either of these court rules, is to lose the privilege for purposes of that action. The rules obviously recognize that

---

[3] For example, MCR 2.314(E)(2) provides:

> This rule does not prevent the assertion of a privilege at a time or in a manner otherwise permitted by these rules.

And MCR 2.302(B)(1)(b) allows the assertion of privilege at a deposition:

> A party who has a privilege regarding part or all of the testimony of a deponent must either assert the privilege at the deposition or lose the privilege as to that testimony for purposes of the action.

it is patently unfair for a party to assert a privilege during pretrial proceedings, frustrate rightful discovery by the other party, and then voluntarily waive that privilege at trial, thereby catching the opposing party unprepared, surprised, and at an extreme disadvantage. Thus the rule requires that a party choose between the existing privilege and the desired testimony. The party may not have both.

The rule is rational in its design because the fundamental concept behind the rule of privilege is that one should not be forced to divulge certain information, certain communications, etc. The essence of the privilege is the lack of disclosure, not the time of disclosure. [2 Martin, Dean & Webster, Michigan Court Rules Practice, Rule 2.302, p 168.]

In this case, after the defendants sought information under MCR 2.310, Domako signed authorization forms permitting the release of medical information. The privilege was not asserted, and the plain language of MCR 2.314(B)(1) declares that if the privilege is not asserted in a written response to a request to produce, it is waived for purposes of that action.[4] See also *Schuler v United States,* 113 FRD 518 (WD Mich, 1986) (applying Michigan law). After asserting the privilege at the deposition (five days before trial), plaintiffs' counsel then sought to waive it at the motion hearing.[5]

---

[4] The statute creates a substantive right to prevent disclosure of confidential communications made to facilitate medical treatment; it also contains a procedural mechanism for waiver of that right when the patient "produce[s] any physician *as a witness in his own behalf*" in a malpractice action. The court rules merely provide an additional manner and time for waiver to occur. For example, if medical information is sought under MCR 2.310 without objection, then the privilege is waived. But if no waiver has as yet occurred during discovery, then at trial the statute provides for a waiver. The statute simply comes into play when no discovery has occurred that has resulted in a waiver of the privilege; otherwise, the court rules apply.

[5] Plaintiffs' counsel also appeared to assert the privilege in a letter to Dr. Abbassian after the deposition: "I do not need to remind you of the physician/patient privilege and the fact that that privilege is

After the patient voluntarily allows discovery of the medical information, the plaintiff is not thereafter free to assert the privilege because the plain language of MCR 2.314(B)(1) declares that the privilege is waived *for that action.* The rule is a logical one; after filing a malpractice action and authorizing the release of medical information, the plaintiff can no longer claim an intent to preserve the sanctity of the physician-patient privilege.[6] The privilege attempts to protect confidentiality, and the voluntary disclosure of the information takes away the need for confidentiality. The court correctly determined that the privilege had been waived.

## III

Having concluded that the plaintiff in this matter waived the physician-patient privilege, we must determine whether the defendant was nevertheless precluded from conducting the ex parte interview.

Some courts have held that even where the privilege is waived, discovery is limited to formal

inviolate. The fact that Mrs. Domako has sued a physician does not give you any right whatsoever to violate her confidential relationship with you." Plaintiffs' counsel then proceeded, however, to rescind his assertion of privilege at the motion hearing, "I don't object to [Dr. Abbassian] saying what caused [the fistula]," and "[we] don't object to him testifying as to what he did."

These actions appear to have been designed to obtain tactical advantage, not to protect confidentiality; this is the type of gamesmanship the court rules seek to avoid by requiring an early decision on waiver.

[6] This rationale is summarized concisely in 8 Wigmore, Evidence, § 2389, p 855: "The whole reason for the privilege is the patient's supposed unwillingness that the ailment should be disclosed to the world at large; hence the bringing of a suit in which the very declaration, and much more the proof, discloses the ailment to the world at large, is of itself an indication that the supposed repugnancy to disclosure does not exist."

methods of discovery.[7] See *Wenninger v Muesing,*
307 Minn 405; 240 NW2d 333 (1976); *Hammonds v
Aetna Casualty & Surety Co,* 243 F Supp 793 (ND
Ohio, 1965); *Petrillo v Syntex Laboratories,* 148 Ill
App 3d 581; 499 NE2d 452 (1986).[8]

Before the adoption of the Michigan Court Rules
of 1985, it seemed to be established that a defense
counsel was permitted to conduct ex parte inter-
views with a plaintiff's treating physician follow-
ing a waiver of the physician-patient privilege. In
*Gailitis v Bassett,* 5 Mich App 382, 384; 146 NW2d
708 (1966), while not expressly referring to ex
parte contacts, the Court found "no error in
authorizing defendant's counsel to interview
plaintiff's physician."[9] But in *Jordan, supra,* the

---

[7] Formal methods of discovery directed at nonparties include: depo-
sition on oral examination, MCR 2.306; deposition on written ques-
tions, MCR 2.307; and request to produce documents and things, MCR
2.310.

[8] Similarly, the court in *Jordan, supra* at 344, declared that even if
there is waiver, defense counsel is limited to formal methods of
discovery.

> A physician cannot be treated like an ordinary witness
> because of the physician-patient privilege and the public policy
> which supports that privilege. The physician's ethical and legal
> duty not to reveal confidences and the importance and neces-
> sity of that trust to both the patient and the medical profession
> require that both the physician and the patient be *protected by
> the use of only formal methods of discovery.* The physician's
> fiduciary duty to his patient precludes any ex parte conferences
> with his patient's adversary. [Emphasis added.]

This postulation of a fiduciary duty, separate and apart from the
privilege and operating to preclude ex parte interviews, finds no basis
in any decision of this Court or in statute. Because the physician-
patient privilege is purely statutory and did not exist at common law,
*New York Life Ins Co v Newman,* 311 Mich 368; 18 NW2d 859 (1945),
and because the statutory privilege was enacted for the sole purpose
of enabling persons to secure medical aid without betrayal of confi-
dences, we are convinced that the concept of fiduciary duty, if it
exists, is subsumed by the physician-patient privilege.

[9] Several authorities have interpreted *Gailitis* to stand for the
proposition that ex parte interviews are sanctioned in Michigan. See
*Stempler v Speidell,* 100 NJ 368, 379; 495 A2d 857 (1985) (there was

Court stated that it was not clear whether *Gailitis* was actually authorizing ex parte interviews or merely allowing a deposition. The Court in *Jordan* further opined that even if *Gailitis* did authorize ex parte interviews, the decision was "overruled by the new court rules." 171 Mich App 348. We disagree.

This Court has previously recognized our state's open discovery process. In *Daniels v Allen Industries, Inc,* 391 Mich 398, 403; 216 NW2d 762 (1974), we stated that "Michigan has a strong historical commitment to a far-reaching, open and effective discovery practice. In light of that commitment, this Court has repeatedly emphasized that discovery rules are to be liberally construed . . . to further the ends of justice." See also *Prentis v Yale Mfg Co,* 421 Mich 670; 365 NW2d 176 (1984). While *Daniels* was interpreting GCR 1963, 310, the Michigan Court Rules of 1985 in no way acted to restrict discovery or to modify this commitment to open discovery. Indeed, the opposite is true. We find ourselves in agreement with the statement of the Court of Appeals in this case that "the new rules were intended to further liberalize Michigan's already open discovery process." 184 Mich App 148-149.[10] The very existence of the early waiver provision evidences further liberalization of the discovery rules. Before the Michigan Court

"no reason given for allowing interview of plaintiff's physician" in *Gailitis*); *Green v Bloodsworth,* 501 A2d 1257 (Del Super, 1985); *Lazorick v Brown,* 195 NJ Super 444, 453; 480 A2d 223 (1984) ("[c]ases upholding the right to have a private conference with a litigant's treating doctor are . . . *Gailitis v Bassett*"); annotation: *Discovery: Right to ex parte interview with injured party's treating physician,* 50 ALR4th 715, 720.

[10] As evidence of this further liberalization, we note, for example, that the new rules expunged the "good cause" requirement for the discovery of documents and things. See MCR 2.310. And the "admissibility" requirement for pretrial discovery was also removed. See MCR 2.302. All relevant, nonprivileged information likely to lead to admissible evidence is now subject to discovery.

Rules, a party could wait until trial to waive the privilege, thereby forestalling pretrial discovery. That is no longer feasible under MCR 2.314(B)(2), which requires assertion or waiver at the pretrial stage. It would be a regression to conclude that the Michigan Court Rules of 1985 operated to preclude a method of discovery acceptable under the General Court Rules.[11] Furthermore, it is routine practice, sanctioned by the Standard Jury Instructions, to talk with each witness before trial to learn what the witness knows about the case and what testimony the witness is likely to give at trial. SJI2d 2.06.

The purpose of discovery is the simplification and clarification of issues. Discovery should " 'provide accurate information in advance of trial as to the actual facts and circumstances of a controversy. . . . [It] should promote the discovery of the true facts and circumstances of a controversy, rather than aid in their concealment.' " *Ewer v Dietrich,* 346 Mich 535, 541-542; 78 NW2d 97 (1956) (citing *Hallett v Michigan Consolidated Gas Co,* 298 Mich 582; 299 NW 723 [1941]). Restricting parties to formal methods of discovery would not aid in the search for truth, and it would only serve to complicate trial preparation. MCR 1.105 expressly states that the court rules are "to be construed to secure the just, speedy, and economical determination of every action . . . ." Ex parte interviews appear to advance each of these

---

[11] See the dissent in *Lawrence, supra,* which stated that ex parte interviews were routine procedures under the GCRs (citing *Socha v Passino,* 405 Mich 458; 275 NW2d 243 [1979], for the proposition that absent the assertion of a valid privilege, the parties have the right to prepare for trial by interviewing the witnesses).

Just as a physician takes a personal and family history before treating the patient, an attorney needs all the history of the controversy before trial. See *Hickman v Taylor,* 329 US 495, 501; 67 S Ct 385; 91 L Ed 451 (1947) (the goal of discovery is the "fullest possible knowledge of the issues and facts before trial").

aims. As recognized by other jurisdictions, "such informal methods are to be encouraged, for they facilitate early evaluation and settlement of cases, with a resulting decrease in litigation costs, and represent further the wise application of judicial resources." *Trans-World Investments v Drobny,* 554 P2d 1148, 1152 (Alas, 1976). There is no justification for requiring costly depositions, for example, without knowing in advance that the testimony will be useful. The public policy of simplifying litigation and encouraging settlement militates in favor of these interviews, providing there has been a waiver of the physician-patient privilege. We agree with *Doe v Eli Lilly & Co, Inc,* 99 FRD 126, 128 (D DC, 1983), that "no party to litigation has anything resembling a proprietary right to any witness's evidence. Absent a privilege no party is entitled to restrict an opponent's access to a witness . . . ." While we recognize that the physician is different from an ordinary witness as a result of the confidential nature of the physician's potential testimony, that confidentiality is adequately preserved by the physician-patient privilege. Once the privilege is waived, there are no sound legal or policy grounds for restricting access to the witness.[12]

Although the rules are silent on informal methods of discovery, prohibition of all ex parte interviews would be inconsistent with the purpose of

---

[12] Our conclusion is fortified by courts in other jurisdictions which allow ex parte interviews. See Asher, Glaser & Erard, *Ex parte interviews with plaintiff's treating physicians—The offensive use of the physician-patient privilege,* 67 U Det L R 501, 502, n 2 (1990) (citing *Manion v NPW Medical Center,* 676 F Supp 585 [MD Pa, 1987]; *Sklagen v Greater SE Community Hosp,* 625 F Supp 991 [D DC, 1984]; *Doe, supra; Stempler v Speidell, supra; Covington v Sawyer,* 9 Ohio App 3d 40; 458 NE2d 465 [1983]; *Moses v McWilliams,* 379 Pa Super 150; 549 A2d 950 [1988]). See also *Coralluzzo v Fass,* 450 So 2d 858 (Fla, 1984), *Arctic Motor Freight, Inc v Stover,* 571 P2d 1006 (Alas, 1977), *State ex rel Stufflebam v Appelquist,* 694 SW2d 882 (Mo App, 1985), and *Lazorick v Brown,* n 9 *supra.*

providing equal access to relevant evidence and efficient, cost-effective litigation. The omission of interviews from the court rules does not mean that they are prohibited, because the rules are not meant to be exhaustive. See MCR 2.302(F)(2) (permitting parties to modify the court rules to use other methods of discovery). Their absence from the court rules does indicate that they are not mandated and that the physician cannot be forced to comply, but there is nothing in the court rules precluding an interview if the physician chooses to coöperate. Furthermore, where there is a legitimate concern over the discovery of irrelevant data, the possibility of undue influence, or the threat of breach of the physician's ethical duty, the party asserting the privilege could always establish the proper parameters for questioning through a protective order. MCR 2.302(C).

IV

We affirm the judgment of the Court of Appeals holding that the ex parte interview of the plaintiff's physician was proper because the physician-patient privilege had been waived by lack of timely assertion. After the privilege is waived in a malpractice action, each party is entitled to equal access to relevant information subject to the restrictions against "annoyance, embarrassment, oppression, or undue burden or expense . . . ." MCR 2.302(C).

LEVIN, BRICKLEY, BOYLE, RILEY, and GRIFFIN, JJ., concurred with CAVANAGH, C.J.

MALLETT, J. (concurring). I concur in the result reached by the majority and agree with the analysis contained in part II of the opinion. I do not

believe, however, that "where there is a legitimate
concern over the discovery of irrelevant data, the
possibility of undue influence, or the threat of
breach of the physician's ethical duty, the party
asserting the privilege could always establish the
proper parameters for questioning through a pro-
tective order"[1] in the absence of an ex parte inter-
view notice requirement. To ensure absolutely the
party's ability to secure when necessary a protec-
tive order, the party seeking to schedule the ex
parte interview should at the very least provide
notice. Requiring notice would not frustrate discov-
ery and would provide a firm basis for the mutual
expectation of business professionalism.

[1] *Ante,* p 362.