# STATE OF MICHIGAN

# COURT OF APPEALS

OMRAN DAHER, Minor, by Next Friend
MOHAMAD DAHER,

        Plaintiff-Appellant,

v

BCA OF DETROIT, LLC, doing business as
STONE CREST CENTER, and LUAY HADDAD,

        Defendants-Appellees,

and

ALAA DAHER,

        Defendant.

UNPUBLISHED
January 3, 2019

No. 337510
Wayne Circuit Court
LC No. 16-011719-NO

Before: M. J. KELLY, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Mohamad Daher, as next friend of nine-year-old Omran Daher, brought this action against defendants BCA of Detroit and Dr. Luay Haddad, alleging that they were negligent and grossly negligent for discharging a psychiatric patient, defendant Alaa Daher, without warning his family that he posed a danger to others.[1] Mohamad appeals as of right the trial court's order granting summary disposition in favor of defendants under MCR 2.116(C)(8) and MCR 2.116(C)(10). We reverse and remand.

Alaa Daher is Omran's adult brother. In October 2015, Alaa was hospitalized after suffering from severe mental illness, including paranoid schizophrenia. A petition for hospitalization, which was filed in the Wayne County Probate Court, alleged that Alaa had told a nurse that he was "God" and had threatened to kill police officers or anyone who "messe[d]

---

[1] Mohamad is Omran's father; he is also the father of defendant Alaa Daher, who, following his discharge from psychiatric treatment, stabbed and seriously injured Omran. Alaa was apparently never served with process in these proceedings, and he is not a party to this appeal.

-1-

with" his family. Thereafter, by order of the Wayne County Probate Court, Alaa was transferred to BCA's facility, Stone Crest Center, where he stayed for approximately 13 days. During his time at Stone Crest, he was treated by defendant Haddad, a psychiatrist. On October 16, 2015, Haddad wrote in a letter that he had diagnosed Alaa with schizophrenia and that he recommended that an emergency guardian be appointed for Alaa. The letter also stated that Alaa "was a danger to himself and others because of his delusional, paranoid, and grandiose thought process, cognitive defects, and potential for elopement." Three days later, Mohamad received a phone call from an unknown social worker, advising that Alaa was "fine" and was being discharged. A discharge notice indicates that Alaa denied any suicidal or homicidal ideations. However, within three hours of his arrival at home, Alaa stabbed Omran 13 times. Omran suffered serious injuries and spent three days in the hospital for treatment.

Mohamad, as Omran's next friend, filed this suit against defendants for negligence and gross negligence stemming from their discharge of Alaa. The complaint alleged that defendants had breached their duty of care by failing to advise Alaa's family that he posed a danger to others. Further, it alleged that this constituted gross negligence because it demonstrated a substantial lack of concern for Omran.

Defendants moved for summary disposition under MCR 2.116(C)(7), (8), and (10), arguing that plaintiff's complaint sounded in medical malpractice, that their statutory duty to warn under MCL 300.1946(1) was not triggered because Alaa made no threat of violence against a reasonably identifiable third person, and that there was no common-law duty to warn third persons of any potential danger posed by Alaa. In response, Mohamad contended that the lack of a physician-patient relationship rendered his complaint properly brought as a negligence lawsuit and that summary disposition was premature because he was not yet able to conduct discovery and review Alaa's medical records. He also maintained that a mental health professional's common-law duty to warn third parties was not abrogated by MCL 330.1946. The trial court granted summary disposition in favor of defendants pursuant to MCR 2.116(C)(8) and (10) on the basis that plaintiff was unable to identify a threat of violence against a reasonably identifiable third person.

On appeal, plaintiff argues that the trial court erred by granting summary disposition before any substantive discovery was conducted. We agree.

We review de novo a trial court's ruling on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. When deciding a motion brought under this section, a court considers only the pleadings. [*Maiden*, 461 Mich at 119-120 (quotation marks and citation omitted).]

With respect to the principles governing a motion for summary disposition brought pursuant to MCR 2.116(C)(10), our Supreme Court has explained:

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden*, 461 Mich at 120.]

On the other hand,

[a] motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden*, 461 Mich at 120.]

We also review questions of statutory interpretation de novo. *Dawe v Dr Reuven Bar-Levav & Assoc, PC*, 485 Mich 20, 24; 780 NW2d 272 (2010).

In general, "an individual has no duty to protect another from the criminal acts of a third party in the absence of a special relationship between the defendant and the plaintiff or the defendant and the third party." *Graves v Warner Bros*, 253 Mich App 486, 493; 656 NW2d 195 (2002). However, MCL 330.1946 imposes a statutory duty on mental health professionals to warn or protect third persons from dangerous patients under certain circumstances. MCL 330.1946(1) provides:

If a patient communicates to a mental health professional who is treating the patient a threat of physical violence against a reasonably identifiable third person and the recipient has the apparent intent and ability to carry out that threat in the foreseeable future, the mental health professional has a duty to take action as prescribed in subsection (2).[2] Except as provided in this section, a mental

---

[2] Subsection 2 reads:

A mental health professional has discharged the duty created under subsection (1) if the mental health professional, subsequent to the threat, does 1 or more of the following in a timely manner:

(a) Hospitalizes the patient or initiates proceedings to hospitalize the patient under chapter 4 or 4a.

(b) Makes a reasonable attempt to communicate the threat to the third person and communicates the threat to the local police department or county sheriff for the area where the third person resides or for the area where the patient resides, or to the state police.

health professional does not have a duty to warn a third person of a threat as described in this subsection or to protect the third person.

This statute applies to individual mental health care professionals as well as mental health institutions. *Swan v Wedgwood Christian Youth & Family Servs, Inc*, 230 Mich App 190, 201; 583 NW2d 719 (1998). In summary, a mental health professional's statutory duty to warn third parties "only arises if three criteria are met: (1) a patient makes a threat of physical violence, (2) the threat is against a reasonably identifiable third person, and (3) the patient has the apparent intent and ability to carry out the threat." *Dawe*, 485 Mich at 29.

As to the first criterion—"a patient makes a threat of physical violence"—the assertion that there was no threat of physical violence is at least somewhat at odds with Haddad's letter of October 16, 2015, which states that Alaa was "a danger to himself and others." Because summary disposition was granted before any meaningful discovery took place, it is unclear from the limited record how Haddad reached this conclusion and whether it was based on an actual communicated threat of violence, or was simply made based on Alaa's diagnosis of schizophrenia with "delusional, paranoid, and grandiose" thought process.

As for the other criteria, it cannot be stressed strongly enough that these motions were brought in lieu of filing responsive pleadings and before *any* discovery had taken place. It is therefore hardly surprising that plaintiff was unable to muster evidence at the hearing showing that Alaa had made a threat to a reasonably identifiable third person.

Discovery is the keystone to gathering evidence in civil litigation. It is well settled that Michigan follows an open, broad discovery policy that permits liberal discovery of any matter, not privileged, that is relevant to the subject matter involved in the pending case. *Domako v Rowe,* 438 Mich 347, 353, 359; 475 NW2d 30 (1991). In addition, our Supreme Court has repeatedly emphasized that the purpose of discovery is to simplify and clarify issues. *Id*. at 360. Thus, the rules should be construed in an effort to facilitate trial preparation and to further the ends of justice. *Id*. Moreover, the discovery process should promote the discovery of the facts and circumstances of a controversy, rather than aid in their concealment. *Id*.

Nevertheless, "[a] grant of summary disposition is premature if granted before discovery on a disputed issue is complete." *Mackey v Dep't of Corrections,* 205 Mich App 330, 333: 517 NW2d 303 (1994). Further, "summary disposition is appropriate if there is no fair chance that further discovery will result in factual support for the party opposing the motion." *Id.* However, in this case, not only was there no "further" discovery, there was no discovery at all. It is

---

(c) If the mental health professional has reason to believe that the third person who is threatened is a minor or is incompetent by other than age, takes the steps set forth in subdivision (b) and communicates the threat to the department of social services in the county where the minor resides and to the third person's custodial parent, noncustodial parent, or legal guardian, whoever is appropriate in the best interests of the third person. [MCL 330.1946(2).]

disingenuous to conclude as a matter of law that "there is no fair chance" that discovery will result in factual support to oppose the claim when the motion was brought before any discovery was conducted. Civil procedure does not—and should not—operate in this manner.

Here, plaintiff presented some independent evidence that there was a dispute. Namely, plaintiff pointed to Haddad's report and the notes from a nurse, both of which indicated that Alaa was a threat to himself and others. Based on that evidence, there is "a fair chance that further discovery will result in factual support for the party opposing the motion." See *Mackey*, 205 Mich App at 333. Consequently, we conclude that plaintiff's request for discovery is not a mere fishing expedition based solely on conjecture.

Furthermore, we do not agree with plaintiff's assertion that defendants had a common-law duty to warn or protect Omran from Alaa. The enactment of MCL 330.1946(1) abrogated any duty of a mental health professional to warn or protect third parties from potential dangers posed by a patient. "The Legislature may abrogate the common law, but to do so it must speak in no uncertain terms." *Planet Bingo, LLC v VKGS, LLC*, 319 Mich App 308, 320; 900 NW2d 680 (2017) (quotation marks and citation omitted). The Legislature provided in MCL 330.1946 that "[e]xcept as provided in this section, a mental health professional does not have a duty to warn a third person of a threat as described in this subsection or to protect the third person." Therefore, in no uncertain terms, the Legislature abrogated a mental health professional's duty to warn or protect a third party except for the specific situation outlined in the statute. Nonetheless, this was not fatal to plaintiff's case because plaintiff should have been given the opportunity to amend his complaint. Leave to amend a complaint should be freely granted "when justice so requires." *Phillips v Deihm*, 213 Mich App 389, 393; 541 NW2d 566 (1995); MCR 2.118(A)(2). In addition, if a court grants summary disposition under MCR 2.116(C)(8), "the court must give the parties an opportunity to amend their pleadings pursuant to MCR 2.118, unless the amendment would be futile." *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997); see also MCR 2.116(I)(5). Accordingly, the deficiencies in plaintiff's pleadings are not dispositive.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff may tax costs.

/s/ Michael J. Kelly
/s/ David H. Sawyer
/s/ Jane E. Markey