**Lansing, Michigan**

# Opinion

Chief Justice:
Marilyn Kelly

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED JULY 13, 2010

STATE OF MICHIGAN

SUPREME COURT

ANDREA L. HOLMAN, Personal
Representative of the Estate of LINDA
CLIPPERT, Deceased,

        Plaintiff-Appellant,

v                                        No. 137993

MARK RASAK D.O.,

        Defendant-Appellee.

BEFORE THE ENTIRE BENCH

CORRIGAN, J.

We granted leave to consider whether the Health Insurance Portability and Accountability Act (HIPAA), 42 USC 1320d *et seq*., permits ex parte interviews by defense counsel with treating physicians under a qualified protective order. We hold that ex parte interviews, which are permitted under Michigan law, are also consistent with HIPAA regulations, provided that "reasonable efforts have been made . . . to secure a qualified protective order that meets the requirements of [45 CFR 164.512(e)(1)(v)]." 45 CFR 164.512(e)(1)(ii)(B). Accordingly, we affirm the judgment of the Court of Appeals.

## I. FACTS AND PROCEEDINGS

The Court of Appeals summarized the relevant facts and trial court proceedings:

> Plaintiff filed this wrongful-death medical-malpractice action alleging that defendant had failed to properly diagnose or treat plaintiff's decedent, Linda Clippert, thereby proximately causing her death. Defendant sought to interview Clippert's treating physician, but plaintiff refused to waive Clippert's confidentiality rights under the Health Insurance Portability and Accountability Act (HIPAA), 42 USC 1320d *et seq*. Plaintiff signed a waiver allowing the release of medical records, but refused to provide a release for oral communications. Defendant moved for a qualified protective order to permit an ex parte interview with Clippert's treating physician, but the circuit court denied the motion. The court concluded that "the HIPAA provision relative to a protective order only . . . pertains to documentary evidence" and "that HIPAA does not authorize ex parte oral interviews." [*Holman v Rasak*, 281 Mich App 507, 508; 761 NW2d 391 (2008).]

The Court of Appeals granted defendant's application for leave to appeal and concluded that defense counsel may conduct an ex parte interview with a plaintiff's treating physician "if a qualified protective order, consistent with 45 CFR 164.512(e)(1), is first put in place." *Id*. at 513. The Court "agree[d] with plaintiff that HIPAA supersedes Michigan law to the extent that its protections and requirements are more stringent than those provided by state law," but disagreed with the trial court's conclusion "that a defendant's ex parte interview with a treating physician may not be the subject of a qualified protective order under HIPAA." *Id*. at 511-512. It reasoned that the relevant HIPAA regulation, 45 CFR 164.512(e)(1)(ii), does not exclude oral communication from the regulations governing disclosure of protected health information. *Id*. at 512. Moreover, "45 CFR 160.103 specifically provides that HIPAA applies to both oral and written information, and 45 CFR 164.512(e)(2) makes clear that the regulations

concerning qualified protective orders 'do not supersede other provisions of this section that otherwise permit or restrict uses or disclosures of protected health information.'" *Id.*, quoting 45 CFR 164.512(e)(2). The panel also rejected plaintiff's argument that defendants may rely on written medical records and conduct depositions if more information is required. It quoted this Court's observation in *Domako v Rowe*, 438 Mich 347, 361; 475 NW2d 30 (1991), that informal interviews are "'routine practice'" and that "'[t]here is no justification for requiring costly depositions . . . without knowing in advance that the testimony will be useful.'" *Holman*, 281 Mich App at 512-513. The panel reversed the trial court's order and remanded for further proceedings.

We granted plaintiff's application for leave to appeal to consider whether HIPAA permits defense counsel to seek ex parte interviews with a plaintiff's treating physicians.

## II. HIPAA

Congress enacted the Health Insurance Portability and Accountability Act in 1996. HIPAA provided that if Congress did not enact "legislation governing standards with respect to the privacy of individually identifiable health information within 36 months after HIPPA was enacted," the Secretary of Health and Human Services would be required to "promulgate final regulations containing such standards . . . ." PL 104-191, § 264(c)(1), 110 Stat 2033. Pursuant to that legislative mandate, 45 CFR 164.502(a)

3

provides that "[a] covered entity may not use or disclose protected health information, except as permitted or required by this subpart . . . ."[1]

"[C]overed entity" means: (1) "[a] health plan"; (2) "[a] health care clearinghouse," or (3) "[a] health care provider who transmits any health information in electronic form in connection with a transaction" for which the Department of Health and Human Services (HHS) has adopted standards under HIPAA.  45 CFR 160.103.  With exceptions not relevant here, "protected health information" means "individually

---

[1] Additionally, the Department of Health and Human Services (HHS), the federal agency charged with administering HIPAA, has provided the following gloss on its role under HIPAA:

> The Health Insurance Portability and Accountability Act of 1996 (HIPAA), Public Law 104-191, was enacted on August 21, 1996. Sections 261 through 264 of HIPAA require the Secretary of HHS to publicize standards for the electronic exchange, privacy and security of health information. Collectively these are known as the *Administrative Simplification* provisions. HIPAA required the Secretary to issue privacy regulations governing individually identifiable health information, if Congress did not enact privacy legislation within three years of the passage of HIPAA. Because Congress did not enact privacy legislation, HHS developed a proposed rule and released it for public comment on November 3, 1999. . . . The final modifications were published in final form on August 14, 2002.  [U.S. Dept. of Health and Human Services, Office for Civil Rights, Summary of the HIPAA Privacy Rule at 1-2 ("HHS Summary") (footnotes omitted). Available at: <http://www.hhs.gov/ocr/privacy/hipaa/ understanding/summary/privacysummary.pdf> (accessed May 14, 2010.)]

The HIPAA "Privacy Rule" promulgated by the HHS Secretary "establishes . . . a set of national standards for the protection of certain health information."  *Id*. at 1.  "The Privacy Rule standards address the use and disclosure of individuals' health information—called 'protected health information' by organizations subject to the Privacy Rule—called 'covered entities,' as well as standards for individuals' privacy rights to understand and control how their health information is used."  *Id*.

4

identifiable health information" transmitted by or maintained in electronic media or "[t]ransmitted or maintained in any other form or medium." 45 CFR 160.103. "Health information" includes both "oral" information and information that is "recorded in any form or medium . . . ." *Id*. "Individually identifiable health information"

> is information that is a subset of health information, including demographic information collected from an individual, and:
>
> (1) [i]s created or received by a health care provider, health plan, employer, or health care clearinghouse; and
>
> (2) [r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and
>
> (i) [t]hat identifies the individual; or
>
> (ii) [w]ith respect to which there is a reasonable basis to believe the information can be used to identify the individual. [*Id.*]

Thus, "protected health information" is any health information, oral or recorded, that is individually identifiable and transmitted or maintained by a covered entity in any form or medium. 45 CFR 160.103.[2]

## III. STANDARD OF REVIEW

Although a trial court's decision on a motion regarding discovery is reviewed for an abuse of discretion, *People v Phillips*, 468 Mich 583, 587; 663 NW2d 463 (2003), this case presents questions of statutory interpretation, which we review de novo as questions

---

[2] See also HHS Summary, *supra* at 3, citing 45 CFR 160.103 ("The Privacy Rule protects all '*individually identifiable health information*' held or transmitted by a covered entity or its business associate, in any form or media, whether electronic, paper, or oral. The Privacy Rule calls this information '*protected health information (PHI)*.'").

5

of law, *In re Investigation of March 1999 Riots*, 463 Mich 378, 383; 617 NW2d 310 (2000).

## IV. ANALYSIS

Under Michigan law, defense counsel in a medical malpractice action is permitted to seek an ex parte interview with a plaintiff's treating physician once the plaintiff has waived the physician-patient privilege with respect to that physician. *Domako*, 438 Mich at 361. MCL 600.2157 establishes the physician-patient privilege and also sets forth the rule on waiver of the privilege. It provides, in relevant part:

> Except as otherwise provided by law, a person duly authorized to practice medicine or surgery shall not disclose any information that the person has acquired in attending a patient in a professional character, if the information was necessary to enable the person to prescribe for the patient as a physician, or to do any act for the patient as a surgeon. *If the patient brings an action against any defendant to recover for any personal injuries, or for any malpractice, and the patient produces a physician as a witness in the patient's own behalf who has treated the patient for the injury or for any disease or condition for which the malpractice is alleged, the patient shall be considered to have waived the privilege provided in this section as to another physician who has treated the patient for the injuries, disease, or condition*. [Emphasis added.]

In *Domako*, 438 Mich at 361, we explained that

> "[N]o party to litigation has anything resembling a proprietary right to any witness's evidence. *Absent a privilege no party is entitled to restrict an opponent's access to a witness . . . .*" While we recognize that the physician is different from an ordinary witness as a result of the confidential nature of the physician's potential testimony, that confidentiality is adequately preserved by the physician-patient privilege. *Once the privilege is waived, there are no sound legal or policy grounds for restricting access to the witness*. [*Domako*, 438 Mich at 361, quoting *Doe v Eli Lilly & Co*, 99 FRD 126, 128 (D DC, 1983) (emphasis added).]

With respect to ex parte interviews, we explained:

6

Although the rules are silent on informal methods of discovery, *prohibition of all ex parte interviews would be inconsistent with the purpose of providing equal access to relevant evidence and efficient, cost-effective litigation.* The omission of interviews from the court rules does not mean that they are prohibited, because the rules are not meant to be exhaustive. See MCR 2.302(F)(2) (permitting parties to modify the court rules to use other methods of discovery). *Their absence from the court rules does indicate that they are not mandated and that the physician cannot be forced to comply, but there is nothing in the court rules precluding an interview if the physician chooses to coöperate.* [*Domako*, 438 Mich at 361-362.]

After we decided *Domako*, the Legislature enacted MCL 600.2912f,[3] which

provides that a defendant in a medical malpractice action or the defendant's attorney or

---

[3] MCL 600.2912f, which became effective April 1, 1994, provides:

(1) A person who has given notice under [MCL 600.2912b] or who has commenced an action alleging medical malpractice waives for purposes of that claim or action the privilege created by [MCL 600.2157] and any other similar privilege created by law with respect to a person or entity who was involved in the acts, transactions, events, or occurrences that are the basis for the claim or action or who provided care or treatment to the claimant or plaintiff in the claim or action for that condition or a condition related to the claim or action either before or after those acts, transactions, events, or occurrences, whether or not the person is a party to the claim or action.

(2) Pursuant to subsection (1), a person or entity who has received notice under [MCL 600.2912b] or who has been named as a defendant in an action alleging medical malpractice or that person's or entity's attorney or authorized representative may communicate with a person specified in [MCL 600.5838a] in order to obtain all information relevant to the subject matter of the claim or action and to prepare the person's or entity's defense to the claim or action.

(3) A person who discloses information under subsection (2) to a person or entity who has received notice under [MCL 600.2912b] or to a person or entity who has been named as a defendant in an action alleging medical malpractice or to the person's or entity's attorney or authorized

7

representative "may communicate" with persons or entities with respect to whom the plaintiff has waived the physician-patient privilege "in order to obtain all information relevant to the subject matter of the claim or action and to prepare the person's or entity's defense to the claim or action." MCL 600.2912f(2). The statute also makes clear that a person who discloses such information "does not violate [MCL 600.2157] or any other similar duty or obligation created by law and owed to the claimant or plaintiff." MCL 600.2912f(3).

Under HIPAA, the general rule pertaining to the disclosure of protected health information is that a covered entity may not use or disclose protected health information without a written authorization from the individual as described in 45 CFR 164.508, or, alternatively, the opportunity for the individual to agree or object as described in 45 CFR 164.510. 45 CFR 164.512, however, enumerates several specific situations in which "[a] covered entity may use or disclose protected health information without the written authorization of the individual, as described in [45 CFR] 164.508, or the opportunity for the individual to agree or object as described in [45 CFR] 164.510 . . . ." 45 CFR 164.512.[4] This regulation provides alternative requirements for disclosures in specific

---

representative does not violate [MCL 600.2157] or any other similar duty or obligation created by law and owed to the claimant or plaintiff.

[4] The dissent concludes that the introductory paragraph of 45 CFR 164.512, and the second sentence in particular, "specifically limits when a covered entity may disclose protected health information *orally*[.]" We respectfully disagree. The paragraph provides, in full:

8

situations. Relevant here is paragraph (e), "[d]isclosures for judicial and administrative proceedings," which permits a covered entity to disclose protected health information in response to "an order of a court or administrative tribunal," or "[i]n response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:"

(A) [t]he covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

(B) [t]he covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure

---

A covered entity may use or disclose protected health information without the written authorization of the individual, as described in § 164.508, or the opportunity for the individual to agree or object as described in § 164.510, in the situations covered by this section, subject to the applicable requirements of this section. *When the covered entity is required by this section to inform the individual of, or when the individual may agree to, a use or disclosure permitted by this section, the covered entity's information and the individual's agreement may be given orally.* [Emphasis added.]

The purpose of the introductory paragraph is to explain that, for the uses and disclosures described in the lettered subsections of 45 CFR 164.512, the general requirements of a "written authorization of the individual as described in § 164.508" and "the opportunity for the individual to agree or object as described in § 164.510" need not be met. The second sentence explains how the covered entity may *inform* the individual of the use or disclosure when required to do so, and how the individual may *agree* to the use or disclosure. This introductory paragraph does not govern the form of a *use or disclosure* of *protected health information.*

a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section. [45 CFR 164.512(e)(1)(i) and (ii).][5]

A "qualified protective order" is an order of a court or administrative tribunal or a stipulation by the parties that:

(A) [p]rohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and

(B) [r]equires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding. [45 CFR 164.512(e)(1)(v).]

Under HIPAA, "[a] standard, requirement, or implementation specification" of HIPAA "that is *contrary* to a provision of State law preempts the provision of State law" unless, among other exceptions, "[t]he provision of State law relates to the privacy of individually identifiable health information and is more stringent than a standard, requirement, or implementation specification adopted under" HIPAA. 45 CFR 160.203 (emphasis added). "Contrary" means either that "[a] covered entity would find it impossible to comply with both the State and federal requirements" or that "[t]he provision of State law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of" HIPAA. 45 CFR 160.202. "More stringent," in this

---

[5] Alternatively, "a covered entity may disclose protected health information in response to lawful process described in [45 CFR 164.512(e)(1)(ii)] without receiving satisfactory assurance . . . if the *covered entity* makes reasonable efforts . . . to seek a qualified protective order sufficient to meet the requirements of [45 CFR 164.512(e)(1)(iv)]." 45 CFR 164.512(e)(1)(vi) (emphasis added).

context, means "provides greater privacy protection for the individual who is the subject of the individually identifiable health information." 45 CFR 160.202.

We hold that HIPAA does not preempt Michigan law permitting ex parte interviews because Michigan law is not "contrary" to HIPAA under either definition of that term. Michigan law is not "contrary" to HIPAA under the first definition because it is possible for a covered entity to comply with both Michigan law and HIPAA. As the parties acknowledge, HIPAA contains no express mention of ex parte interviews. Thus, the New York Court of Appeals has concluded that New York law permitting ex parte interviews and HIPAA could coexist because HIPAA "merely superimposed procedural requirements" onto state law:

> In addition, HHS has pointedly advised that where "there is a State provision and no comparable or analogous federal provision, or the converse is the case," there is no possibility of preemption because in the absence of anything to compare "there cannot be . . . a 'contrary' requirement" and so "the stand-alone requirement—be it State or federal—is effective" (64 Fed Reg 59918, 59995). As a result, there can be no conflict between New York law and HIPAA on the subject of ex parte interviews of treating physicians because HIPAA does not address this subject. *Accordingly, the Privacy Rule does not prevent this informal discovery from going forward, it merely superimposes procedural prerequisites.* As a practical matter, this means that the attorney who wishes to contact an adverse party's treating physician must first obtain a valid HIPAA authorization or a court or administrative order; or must issue a subpoena, discovery request or other lawful process with satisfactory assurances relating to either notification or a qualified protective order. [*Arons v Jutkowitz*, 9 NY3d 393, 415; 880 NEwd 831; 850 NYS2d 345 (2007) (emphasis added).]

We agree with the *Arons* court's analysis. Ex parte interviews are permitted under Michigan law, and nothing in HIPAA specifically precludes them. Because it is possible for defense counsel to insure that any disclosure of protected health information by the

11

covered entity complies with 45 CFR 164.512(e) by making "reasonable efforts" to obtain a qualified protective order, HIPAA does not preempt Michigan law concerning ex parte interviews.

Plaintiff raises several arguments in support of her position that 45 CFR 164.512(e) does not permit ex parte interviews. First, she claims that HIPAA does not authorize informal discovery and that its provision for disclosure of protected health information pursuant to a qualified protective order applies only when a party seeks protected health information in the context of formal discovery. We disagree. Under 45 CFR 164.512(e)(1)(ii), a covered entity is permitted to "disclose protected health information in the course of any judicial or administrative proceeding":

> (ii) [i]n response to a *subpoena, discovery request, or other lawful process* that is not accompanied by an order of a court or administrative tribunal, if:

> (A) [t]he covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

> (B) [t]he covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section. [Emphasis added.]

As previously discussed, ex parte interviews are permitted under Michigan law as a means of informal discovery. Thus, even if "discovery request" contemplates formal discovery, a request for an ex parte interview is at least "other lawful process" within the meaning of 45 CFR 164.512(e)(1)(ii). Therefore, as long as "[t]he covered entity

12

receives satisfactory assurance . . . that reasonable efforts have been made . . . to secure a qualified protective order" that meets the requirements of subsection (e)(1)(v), disclosure of protected health information by a covered entity during an ex parte interview is consistent with both Michigan law and HIPAA. The HIPAA regulations were "not intended to disrupt current practice whereby an individual who is a party to a proceeding and has put his or her medical condition at issue will not prevail without consenting to the production of his or her protected health information." 65 Fed Reg 82462-01, 82530 (December 28, 2000), discussing 45 CFR 164.512(e).[6]

Plaintiff and the dissent also argue that an ex parte interview is not a proper subject of a qualified protective order because 45 CFR 164.512(e)(1)(v)(B) requires the "return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding." Plaintiff argues that this provision thus contemplates that only "documentary" evidence will be the subject of a qualified protective order.[7] We disagree. The distinction plaintiff makes between "documentary" information and other types of information is not one that exists in HIPAA. As previously discussed, "health information" explicitly includes "oral

---

[6] Other jurisdictions, which, like Michigan, permitted ex parte interviews before HIPAA, are in accord in determining that HIPAA did not disrupt state law practice and that this type of informal discovery request is permitted under HIPAA. See, e.g., *Arons*, *supra*; *Reutter v Weber*, 179 P3d 977 (Colo, 2007); *Holmes v Nightingale*, 2007 OK 15; 158 P3d 1039 (Okla, 2007); *Smith v American Home Prod Corp*, 372 NJ Super 105; 855 A2d 608 (NJ Super, 2003).

[7] The dissent apparently agrees. It observes that "[a] verbal ex parte interview cannot be returned or destroyed at the conclusion of the litigation."

13

information," and all individually identifiable health information transmitted or maintained in any form or medium is "protected health information" under HIPAA. 45 CFR 160.103. We see no logical reason that "protected health information" maintained in a physician's records and conveyed verbally by a physician during an ex parte interview cannot be the subject of a qualified protective order under 45 CFR 164.512(e)(1)(v). The requirement in subsection (e)(1)(v)(B) to return or destroy "protected health information" applies to *all* protected health information, as the term is defined under HIPAA and its regulations.

Moreover, plaintiff's argument proceeds from the assumption that an ex parte interview never generates a physical record. This is simply incorrect. For instance, if the ex parte interview is conducted orally, a recording of the conversation could be produced. Alternatively, defense counsel and a physician might choose to conduct an ex parte interview via e-mail. And written documents may be exchanged at an ex parte interview. All of these records could be "returned" or "destroyed," thus making the requirement of 45 CFR 164.512(e)(1)(v)(B) applicable, and defeating the argument that a qualified protective order cannot be fashioned for an ex parte interview under the plain meaning of the statute.

Plaintiff also argues that 45 CFR 164.512(e) does not allow ex parte interviews because defense counsel does not particularize the specific health information being sought in the interview, and that ex parte interviews lack adequate protections and limitations on the scope of disclosure. She argues that 45 CFR 164.512(e) "presumes that the parties are aware of the [protected health information] that has been requested **before**

14

entry of a qualified protective order." (Plaintiff's Reply Brief, pp 1-2.) She relies on the following language from 45 CFR 164.512(e)(1)(v): "'For purposes of paragraph (e)(1) of this section, a qualified protective order means, **with respect to protected health information __requested__ under paragraph (e)(1)(ii) of this section**, an order of the court . . . .'" (Emphasis added by plaintiff.) 45 CFR 164.512(e)(1)(ii), however, makes no reference to a request for *specific* health information. It simply provides that a covered entity may disclose protected health information "[i]n response to a subpoena, discovery request, or other lawful process" if the other requirements of the section are met. This is in contrast to 45 CFR 164.512(e)(1)(i), which permits disclosure in response to a <u>court order</u>, "*provided that the covered entity discloses only the protected health information expressly authorized by such order*[.]" (Emphasis added.)

Accordingly, we conclude that Michigan's approach to informal discovery, which permits defense counsel to seek an ex parte interview with a plaintiff's treating physician, is not "contrary" to HIPAA. An ex parte interview may be conducted and a covered entity may disclose protected health information during the interview in a manner that is consistent with HIPAA, as long as "[t]he covered entity receives satisfactory assurance . . . that reasonable efforts have been made . . . to secure a qualified protective order that meets the requirements of [45 CFR 164.512(e)(1)(v)]." 45 CFR 164.512(e)(1)(ii)(B).[8]

_____

[8] The "reasonable efforts" language comes directly from 45 CFR 164.512(e), which unquestionably governs disclosures of protected health information for judicial or administrative proceedings. We disagree with the dissent's unsupported assertion that 45

15

Nor does Michigan law concerning ex parte interviews "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of" HIPAA—the second definition of "contrary" under 45 CFR 160.202. Plaintiff claims that allowing ex parte interviews frustrates HIPAA's purpose of protecting the privacy of an individual's health information. While HIPAA is obviously concerned with protecting the privacy of individuals' health information, it does not enforce that goal to the exclusion of all other interests. Rather, it balances the protection of individual privacy with the need for disclosure in some situations. Thus, a covered entity may disclose protected health information: (1) to "[a] public health authority that is authorized by law to collect or receive such information for the purpose of preventing or controlling disease, injury, or disability," 45 CFR 164.512(b)(i); (2) to an employer, if "[t]he covered entity is a covered health care provider who is a member of the workforce of such employer or who provides health care to the individual at the request of the employer" in order "[t]o evaluate whether the individual has a work-related illness or injury," 45 CFR 164.512(b)(v)(A)(*2*); (3) "to a health oversight agency for oversight activities authorized by law, including audits; civil, administrative, or criminal investigations; inspections; licensure or disciplinary actions; civil, administrative, or criminal proceedings or actions," 45 CFR 164.512(d)(1); and (4) "to authorized federal officials for the conduct of lawful intelligence, counter-intelligence, and other national security activities

CFR 164.512(e) is "only applicable if there is a corresponding judicial or administrative procedure available under state law or court rule." The dissent would apparently hold that 45 CFR 164.512(e) is not "applicable" in Michigan under any circumstances.

16

authorized by the National Security Act," 45 CFR 164.512(k)(2). Given HIPAA's interest in balancing the need for disclosure in certain contexts with the importance of individual privacy, we cannot conclude that ex parte interviews are "contrary" to the objectives of HIPAA, as long as the interviews are sought according to the specific requirements of 45 CFR 164.512(e). Because we conclude that HIPAA does not preempt state law, we affirm the judgment of the Court of Appeals.

Finally, we emphasize that while we have been asked in this case to decide whether HIPAA permits defense counsel to seek an ex parte interview with a plaintiff's treating physician, 45 CFR 164.512(e)(1) is directed at covered entities, not parties or trial courts. HIPAA does not require a trial court to grant a motion for a protective order. Therefore, a trial court retains its discretion under MCR 2.302(C)[9] to issue protective orders and to impose conditions on ex parte interviews.[10]

---

[9] MCR 2.302(C) provides in relevant part:

> On motion by a party or by the person from whom discovery is sought, and on reasonable notice and for good cause shown, the court in which the action is pending may issue any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following orders:
>
> (1) that the discovery not be had;
>
> (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place;
>
> (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
>
> (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters;

17

Similarly, 45 CFR 164.512(e)(1) addresses the circumstances under which a covered entity *may* disclose protected health information. Nothing in that provision, or in Michigan law, *requires* a covered entity to consent to an ex parte interview or to disclose protected health information during such an interview. See *Domako*, 438 Mich at 362 ("[T]here is nothing in the court rules precluding an interview if the physician chooses to coöperate."). As one commenter pointed out, "[t]he breadth of HIPAA and the substantial repercussions for HIPAA violations undoubtedly will cause healthcare providers to think twice before agreeing to ex parte interviews, even if defense counsel has a strong argument that HIPAA should not apply." Comment, *Don't ask, don't tell: HIPAA's effect on informal discovery in products liability and personal injury cases*, 2006 BYU L Rev 1075, 1098.

## V. CONCLUSION

Under Michigan law, nothing precludes defense counsel from seeking an ex parte interview with a plaintiff's treating physician once the plaintiff has waived the physician-patient privilege. Michigan law is not "contrary" to HIPAA within the first definition of

---

(5) that discovery be conducted with no one present except persons designated by the court[.]

[10] A trial court's decision on a motion for a protective order is reviewed for an abuse of discretion. *PT Today, Inc v Comm'r of the Office of Fin & Ins Servs*, 270 Mich App 110, 151; 715 NW2d 398 (2006). Because we have determined that ex parte interviews can be the subject of a qualified protective order under HIPAA, where, as here, a trial court bases its denial of such a motion on the erroneous conclusion that such interviews are not allowed under HIPAA, its decision constitutes an abuse of discretion because it falls outside the range of reasonable and principled outcomes. *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007).

that term under 45 CFR 160.202 because, under HIPAA, a covered entity may disclose protected health information during an ex parte interview if "[t]he covered entity receives satisfactory assurance . . . that reasonable efforts have been made . . . to secure a qualified protective order that meets the requirements of [45 CFR 164.512(e)(1)(v)]." 45 CFR 164.512(e)(1)(ii)(B); see also 45 CFR 160.202. Nor does Michigan law concerning ex parte interviews "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of" HIPAA—the second meaning of "contrary" under 45 CFR 160.202—given the balance HIPAA strikes between the protection of individual privacy and the necessity of disclosure in some contexts. Thus, HIPAA does not preempt Michigan law concerning ex parte interviews. Nothing in either HIPAA or Michigan law, however, *requires* a covered entity to agree to an informal ex parte interview with defense counsel, or to disclose protected health information during such an interview.

Accordingly, the trial court abused its discretion by denying defendant's request for a qualified protective order on the grounds that HIPAA precludes ex parte interviews. The result reached by the Court of Appeals is affirmed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

KELLY, C.J., and CAVANAGH, YOUNG, and MARKMAN, JJ., concurred with CORRIGAN, J.

STATE OF MICHIGAN

SUPREME COURT

ANDREA L. HOLMAN, Personal
Representative of the Estate of LINDA
CLIPPERT, Deceased,

      Plaintiff-Appellant,

v                                   No. 137993

MARK RASAK D.O.,

      Defendant-Appellee.

_____

WEAVER, J. (*dissenting*).

      Although I understand the merits of the arguments presented by both the majority

and Justice HATHAWAY's dissent, at this time and in this particular case, I am more

persuaded by the reasoning and result of the dissent.


                                       Elizabeth A.Weaver

S T A T E   O F   M I C H I G A N

SUPREME COURT

ANDREA L. HOLMAN, Personal
Representative of the Estate of LINDA
CLIPPERT, Deceased,

Plaintiff-Appellant,

v                                                                    No. 137993

MARK RASAK D.O.,

Defendant-Appellee.

_____

HATHAWAY, J. (*dissenting*).

The majority holds that an ex parte interview can be conducted under MCR 2.302(C) in a manner that is consistent with the Health Insurance Portability and Accountability Act (HIPAA),[1] provided that reasonable efforts have been made to secure a qualified protective order that meets the requirements of 45 CFR 164.512(e)(1)(v) as set forth in 45 CFR 164.512(e)(1)(ii)(B).  I must respectfully dissent from this decision.

First, ex parte interviews are generally conducted orally.  The introductory portion of 45 CFR 164.512 specifically limits *oral* disclosures of a covered entity's information to instances "[w]hen the covered entity is *required by this section* to inform the individual of, *or when the individual may agree to*, a use or disclosure permitted by this

_____
[1] 42 USC 1320d *et seq*.  References to "HIPAA" may include the regulations promulgated under that statute.

section . . . ." (Emphasis added.) Because an ex parte interview is not required and cannot be compelled by this section or under Michigan law, nor is there a requirement within 45 CFR 164.512(e) that a patient be informed of an ex parte interview in a judicial proceeding, and plaintiff has not agreed to the ex parte interview in this instance, the provisions of 45 CFR 164.512(e) relied on by the majority cannot be construed as authorizing an ex parte interview that involves the oral disclosure of health information.

Second, I also disagree with the majority's conclusion that Michigan law authorizing ex parte interviews is valid and enforceable after the adoption of HIPAA. First, the physician-patient waiver provisions of both MCL 600.2157 and MCL 600.2912f are preempted by HIPAA, because they are contrary to and not more stringent than HIPAA. Second, the majority errs in its reliance on *Domako v Rowe*, 438 Mich 347; 475 NW2d 30 (1991), to support ex parte interviews. While *Domako* was a thoughtful and well reasoned opinion at the time, it relies on MCL 600.2157 and provisions of the Michigan Court Rules that embody that statute. That statute is now preempted by HIPAA. I conclude that ex parte interviews are not allowed in Michigan because HIPAA does not specifically authorize ex parte interviews, and the court rules and statutes relied on to authorize the interviews have been preempted.

Finally, even assuming that an ex parte interview was a permitted oral disclosure under 45 CFR 164.512(e), the majority opines that a party is *only* required to make *reasonable efforts* to obtain a qualified protective order rather than *actually* having to obtain a court order. In so holding, the majority fails to recognize that 45 CFR 164.512(e) applies to judicial and administrative proceedings, and that provisions of this

3

subsection are only applicable if there is a corresponding judicial or administrative procedure available under state law or court rule. This medical malpractice action is being pursued in a circuit court, rather than in an administrative proceeding, and as such is subject to our court rules. Under our court rules, there is no mechanism for a party to only make a *reasonable effort* to obtain a court order. Under the Michigan Court Rules, a party must make a request for an order by motion, and the request is either granted or denied. Under the majority's analysis, only a reasonable effort to secure the order is required, which can only mean that the request could be incompletely made or denied altogether and an ex parte interview could still take place. The majority's analysis and conclusion are completely at odds with our court rules and undermine the authority of trial courts to enforce the court rules and their own orders. Thus, the majority errs by relying on an inapplicable HIPAA provision to support its analysis, and I cannot agree with such an interpretation.

Accordingly, I would vacate the judgment of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

## I. HIPAA

HIPAA was enacted in 1996 to provide a minimum national standard for the protection of private health information. HIPAA was intended to be a shield to protect private medical information from disclosure to third parties. HIPAA is a complex and comprehensive regulatory scheme. This overview is only intended to provide the necessary background to address those HIPAA regulations that deal with judicial proceedings and ex parte communications.

4

HIPAA provides an all-encompassing umbrella that protects the confidentiality of patient health information.  HIPAA regulations specify that a *covered entity may not use or disclose* protected health information, *except as permitted or required under the act*. 45 CFR 164.502(a).  Under its broad definitions, a *covered entity* includes a health plan, a health care clearinghouse, or a health care provider who transmits any health information in electronic form in connection with a covered transaction.  45 CFR 160.103.  *Health Information* includes both oral information as well as information that is recorded in any form or medium that is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse. *Id.  Individually identifiable health information* includes any information that relates to the past, present, or future physical or mental health or condition of an individual, or the past, present, or future provision of or payment for the provision of health care to an individual; and either identifies the individual, or provides a reasonable basis to believe the information can be used to identify the individual.  *Id.*  In sum, HIPAA's umbrella covers any health information, oral or recorded, that is individually identifiable and transmitted or maintained by a covered entity in any form or medium *unless a specific requirement or exception is found in the act* that provides for release of the protected information.

Finally, any HIPAA standard or requirement that is *contrary* to state law *preempts* state law, unless the state law is *more stringent* than HIPAA.  45 CFR 160.203.  *Contrary* means either that a covered entity would find it impossible to comply with both the state and federal requirements or that the provision of state law stands as an obstacle to the

5

accomplishment and execution of the full purposes and objectives of HIPAA. 45 CFR 160.202. *More stringent* means that the state law provides greater privacy protection than HIPAA. 45 CFR 160.202.

## II. HIPAA AND JUDICIAL PROCEEDINGS

HIPAA contains narrowly tailored exceptions for disclosures of protected health information during judicial or administrative proceedings. See 45 CFR 164.512(e). While HIPAA carves out certain areas of the law, such as worker's compensation, for individualized treatment,[2] HIPAA does not contain a separate section applicable only to medical malpractice claims. Nor does HIPAA impose more or less protection of health information for persons bringing medical malpractice claims, and thus medical malpractice claims are bound by the terms and conditions of 45 CFR 164.512(e) governing judicial proceedings. In judicial proceedings, absent a validly executed HIPAA compliant authorization as mandated by 45 CFR 164.508, a covered entity may only disclose health information according to the specific terms and conditions set forth in 45 CFR 164.512(e).

---

[2] Compare and contrast HIPAA's treatment of workers' compensation claims, which provides for a more expansive method of disclosure than is allowed in the general category for judicial proceedings. No comparable section exists for medical malpractice claims. Section 164.512(l) provides:

> *Standard: Disclosures for workers' compensation.* A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by law, that provide benefits for work-related injuries or illness without regard to fault.

6

HIPAA does not address or mention ex parte interviews. The majority opines that because ex parte interviews are not mentioned in HIPAA, they are not contrary to HIPAA, and are thus authorized. I believe this analysis and conclusion are in error. HIPAA only allows for the release of information pursuant to a specifically enumerated requirement or exception. 45 CFR 164.502(a). If no requirement or exception exists, disclosure is not allowed. *Id.*

The majority also suggests that HIPAA draws no distinction between when a covered entity's information needs to be disclosed in documentary form and when the disclosure can be made orally. To the contrary, 45 CFR 164.512 does make this distinction. While the majority relies on 45 CFR 164.512 to authorize *oral* ex parte interviews, they fail to address its introductory portion, which specifically limits when a covered entity may disclose protected health information *orally*:

> A covered entity may use or disclose protected health information without the written authorization of the individual, as described in § 164.508, or the opportunity for the individual to agree or object as described in § 164.510, in the situations covered by this section, subject to the applicable requirements of this section. *When the covered entity is required by this section to inform the individual of, or when the individual may agree to, a use or disclosure permitted by this section, the covered entity's information and the individual's agreement may be given orally.* [45 CFR 164.512 (emphasis added).]

As this plain language indicates, oral disclosures are allowed, but are limited to "[w]hen the covered entity is *required by this section to inform* the individual of, or *when the individual may agree to*, a use or disclosure permitted by this section, *the covered entity's information* and the individual's agreement *may be given orally*." *Id.* (emphasis

7

added). This introductory language contains *limited* circumstances wherein oral disclosures of information are permitted. If the circumstance is not provided for by that language, oral disclosure of information is not allowed. I respectfully suggest that the majority errs in its analysis, because neither of the specific circumstances applicable to use or disclosure of the covered entity's information is present in this instance. Ex parte interviews can not be required by this section or Michigan law, nor is there a requirement within 45 CFR 164.512(e) that a patient be informed of an ex parte interview in a judicial proceeding. Additionally, the ex parte interview was not agreed to in this instance. Accordingly, the two subsections of 45 CFR 164.512(e) relied on by the majority cannot be construed as authorizing ex parte interviews, because the very terms of the introductory language of that section does not allow for oral disclosures.[3]

However, even if the introductory language limiting oral disclosures didn't exist, the majority's reliance on 45 CFR 164.512(e)(1)(ii)(B)[4] would be troubling. Subsection 164.512(e)(1)(ii)(B) permits disclosure "[i]n response to a subpoena, discovery request, or other lawful process, *that is not accompanied by an order of a court* or administrative tribunal, *if* ":

---

[3] Compare and contrast an ex parte interview with a deposition, which can be conducted consistently with 45 CFR 164.512(e) because depositions are a recognized procedure under our court rules which are not only required but can be compelled. Moreover, depositions meet all of the notice provisions of the subsection.

[4] This subsection requires that reasonable efforts be made to secure a protective order that meets the requirements of 45 CFR 164.512(e)(1)(v).

8

(B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section. [Emphasis added.]

This subsection, by its very terms, contemplates the use of state law procedures that occur *without the need for a court order*. Consistent with the mandates of this subsection the majority opines that a party is only required to make *reasonable efforts* to obtain a qualified protective order that meets the requirements of 45 CFR 164.512(e)(1)(v) rather than *actually* having to obtain a court order. In so holding, the majority fails to recognize that subsection 164.512(e) applies to judicial and administrative proceedings, and that its provisions are only applicable if there is a corresponding judicial or administrative procedure available under state law or court rule. This medical malpractice action is being pursued in a circuit court rather than in an administrative proceeding, and as such is subject to our Michigan Court Rules. Under our court rules, there is no mechanism for a party to *only* make a *reasonable effort* to obtain a court order. MCR 2.119(A)(1) requires a request for an order to be made by motion, and the motion is either granted or denied. Query, what does the majority contemplate when it proposes that only a reasonable effort need be made to obtain an order in a circuit court? The majority's "reasonable efforts" analysis can only mean that a request could be incompletely made, or denied by the trial court altogether, and an interview could still take place. Either of these results would be absurd. This analysis and conclusion are completely at odds with our court rules and completely undermine the authority of trial courts to enforce the court rules, or even their own orders.

9

I think it is clear that the majority errs by relying on an inapplicable HIPAA provision to support its analysis, and I cannot agree with such an interpretation. When interpreting § 164.512, it must be understood that this subsection of provision of HIPAA regulation applies not only to courts, but also to every federal agency, including those that administer Medicare, Medicaid, veterans' benefits, and Social Security, to name a few. Most of these federal agencies do not have ready access to circuit court judges who can issue or deny orders. Using a provision that is obviously designed for an administrative proceeding in a judicial proceeding leads to an absurd result. "[S]tatutes must be construed to prevent absurd results . . . ." *Rafferty v Markovitz*, 461 Mich 265, 270; 602 NW2d 367 (1999).

The majority's reliance on § 164.512(e)(1)(v) is equally troubling. Again, even if the prefatory section limiting oral disclosures did not exist, the majority's conclusion that § 164.512(e)(1)(v) may be used because it permits disclosure pursuant to a *qualified protective order* issued by a court or administrative tribunal or a stipulation by the parties is similarly erroneous. This provision "*[r]equires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.*" 45 CFR 164.512(e)(1)(v)(B) (emphasis added). A verbal ex parte interview cannot be returned or destroyed at the conclusion of the litigation. The fact that an interview *could be* recorded or memorialized, thus creating something that could be returned or destroyed, does not resolve the analytical problem as the majority suggests. HIPAA's return-or-destroy provision is *mandatory* and *not permissive*, and we are not free to rewrite HIPAA's mandates; we are required to follow them.

10

Further, to support its analysis, the majority borrows the phrase *oral information* from the broad definition of what is covered by HIPAA and uses it to expand this narrowly tailored exception to justify its interpretation. I must respectfully disagree with this premise and the methodology used to come to the conclusion. What is protected by HIPAA is not the same as what is excepted. What is protected by HIPAA is vast; the exceptions are specific and narrowly tailored. Disclosure is only allowed if *permitted or required under the act*, 45 CFR 164.502(a), and, again, we are not free to rewrite HIPAA's mandates; we are required to follow them.

### III. MICHIGAN STATUTES

It is also necessary to review Michigan law to determine whether ex parte interviews are allowable under any statute or court rule in a manner that is consistent with HIPAA's provisions which allow for *oral* disclosures.[5] This inquiry begins with a review of applicable Michigan medical malpractice statutes to determine if the statutes are enforceable or if they are preempted by HIPAA. State law is preempted by HIPAA if the state law is contrary to HIPAA, meaning that a covered entity would find it impossible to simultaneously comply with the federal and state law and the state law is not more stringent than HIPAA. 45 CFR 160.202.

---

[5] This opinion addresses *oral* disclosures only, and does not opine on disclosure of health information in *written* documentary form.

11

Two statutory provisions, MCL 600.2157 and MCL 600.2912f, provide for the waiver of privilege in the context of medical malpractice actions.  The relevant language of MCL 600.2157 is contained in its second sentence, which provides:

> *If the patient brings an action against any defendant to recover for any personal injuries, or for any malpractice, and the patient produces a physician as a witness* in the patient's own behalf who has treated the patient for the injury or for any disease or condition for which the malpractice is alleged, *the patient shall be considered to have waived the privilege provided in this section* as to another physician who has treated the patient for the injuries, disease, or condition.  [Emphasis added.]

The unambiguous language of this provision clearly indicates that the physician-patient privilege is waived by virtue of two triggering events: (1) *filing* a lawsuit for personal injury or malpractice, and (2) *producing a physician as a witness* in the patient's own behalf.  Once those two triggering events occur, nothing more is required by the statute and the privilege is waived.  The statute does not require compliance with HIPAA to release or compel production of the health information.  Rather, by virtue of the two triggering events alone, waiver occurs and the information may be released or compelled.

Under HIPAA, all health care information is protected by its umbrella *unless* it is specifically exempted.  Release of information in judicial proceedings under HIPAA is controlled by 45 CFR 164.512(e).  However, the exceptions contained within this section are specific and narrowly tailored.  Significantly, none of the specific and narrowly tailored exceptions within § 164.512(e) allows for release of information by virtue of the mere occurrence of the two triggering events named in MCL 600.2157, filing and production of a witness.  Thus, the second sentence of MCL 600.2157 is *contrary* to HIPAA because *contrary* means that a covered entity would find it impossible to comply

12

with both the Michigan and HIPAA requirements, or that the provision of Michigan law stands as an obstacle to the accomplishment and full purposes and objectives of HIPAA. A covered entity cannot simultaneously comply with the second sentence of § 2157 and HIPAA.

Moreover, the second sentence of § 2157 is clearly *not more stringent* in its requirements than HIPAA because *more stringent* means that the state law provides greater privacy protection for the individual who is the subject of the individually identifiable health information. 45 CFR 160.202. The second sentence of § 2157 simply does not provide a patient with greater privacy protection; to the contrary, it provides less. Accordingly, by the very terms and conditions set forth in HIPAA, the second sentence of § 2157, which provides for waiver, is preempted.

MCL 600.2912f must also be reviewed to determine whether any of its provisions are also preempted by HIPAA. I conclude that § 2912f is preempted *in its entirety* because it too is contrary to and not more stringent than HIPAA. MCL 600.2912f provides in pertinent part:

> (1) *A person who has given notice under [MCL 600.2912b]* or who has commenced an action alleging medical malpractice *waives for purposes of that claim or action the privilege created by [MCL 600.2157] and any other similar privilege created by law* with respect to a person or entity who was involved in the acts, transactions, events, or occurrences that are the basis for the claim or action or who provided care or treatment to the claimant or plaintiff in the claim or action for that condition or a condition related to the claim or action either before or after those acts, transactions, events, or occurrences, whether or not the person is a party to the claim or action.

> (2) Pursuant to subsection (1), *a person or entity who has received notice under [MCL 600.2912b] or who has been named as a defendant* in

13

an action alleging medical malpractice or that person's or entity's attorney or authorized representative *may communicate with a person specified in [MCL 600.5838a] in order to obtain all information relevant to the subject matter of the claim* or action and to prepare the person's or entity's defense to the claim or action.  [Emphasis added.]

This statute provides that the physician-patient privilege is waived once a notice of intent (NOI) is provided pursuant to MCL 600.2912b.  Section 2912f, once again, does not require that release of protected health care information be contingent upon compliance with HIPAA by such means as providing the covered entity with a HIPAA compliant authorization or a court order compelling production.  Waiver is triggered in this instance by the mere act of sending or receiving an NOI.  Nothing more is required.  Subsection 164.512(e), which covers disclosure during judicial and administrative proceedings, does not have an exception for disclosure by virtue of an NOI being provided to a defendant in and of itself.[6]  HIPAA provides narrowly tailored methods of release, none of which are similarly required by § 2912f.  As HIPAA contains no exception by virtue of providing an NOI, this entire statute is contrary to HIPAA because a covered entity would find it impossible to comply with both the Michigan and HIPAA requirements, and this statute would stand as an obstacle to the accomplishment and full purposes and objectives of HIPAA.  A covered entity cannot comply with the second sentence of § 2912f and HIPAA, and § 2912f is clearly not more stringent in its requirements than HIPAA.  Section 2912f does not provide greater privacy protection for

---

[6] The medical malpractice NOI waiting period is found in MCL 600.2912b.

14

the individual who is the subject of the individually identifiable health information; to the contrary, it provides less.

This interpretation of § 2157 and § 2912f recognizes that HIPAA protects *all* health care information in any form and that *if and only if* there is a specifically enumerated exception in HIPAA are its provisions waived. HIPAA contains no provision that permits waiver of privilege by the mere act of *filing* a medical malpractice action or sending an NOI, and we are not free to write such an exception into the federal act. If HIPAA did contain such an exception, all one would need to do is give a copy of the complaint or an NOI to a covered entity and ask that it release the requested information. Obviously, no one contemplates this as the procedure; however, that is precisely all these two statutes require. Accordingly, I conclude that the second sentence of § 2157 and all of § 2912f are preempted by HIPAA and are not enforceable.

## IV. *DOMAKO* AND THE MICHIGAN COURT RULES

Finally, it is also necessary to review *Domako* and our court rules to determine whether ex parte interviews can be conducted consistently with HIPAA's provisions which allow for *oral* disclosures. In *Domako*, this Court reviewed both § 2157 and our court rules to determine whether ex parte interviews were permissible. *Domako* found equally compelling support for allowing ex parte interviews in both sources. The Court opined:

> The statute provides protection for information relayed by the patient to the physician, and it also provides for a waiver of the privilege when the plaintiff "produce[s] any physician as a witness in his own behalf" in a malpractice action. *Similarly, the Michigan Court Rules offer protection for medical information*:

15

"When a mental or physical condition of a party is in controversy, medical information about the condition is subject to discovery under MCR 2.310 to the extent that . . . the party does not assert that the information is subject to a valid privilege." [MCR 2.314(A)(1)(b).]

*Just as in the privilege statute, the court rules provide for the waiver of the physician-patient privilege.* MCR 2.314(B)(1) clarifies the procedure by which the patient waives the privilege: "The privilege must be asserted in the party's written response under MCR 2.310. A privilege not timely asserted is waived in that action . . . ." The Staff Comment declares that this section requires a party to decide at the discovery stage whether to assert the privilege. *Unlike other forms of litigation, a case involving medical malpractice cannot proceed without evidence of the physical or mental condition of the plaintiff. Therefore, requiring the plaintiff to decide whether to assert the privilege at the discovery stage, rather than at trial, promotes efficient use of judicial resources by fostering an early resolution of this issue.*[7] [Emphasis added.]

As previously indicated, § 2157 has been preempted by HIPAA, and that portion of the *Domako* analysis is no longer valid. Accordingly, the only remaining question is whether *Domako*'s court rule analysis has continuing validity, and I conclude that it does not, despite the fact that *Domako* was a thoughtful and well reasoned opinion.

*Domako* reasoned that ex parte interviews were permissible under our court rules because "*[j]ust as in the privilege statute, the court rules provide for the waiver of the physician-patient privilege . . . [a] privilege not timely asserted is waived in that action . . . .*" *Domako*, 438 Mich at 354 (emphasis added). This analysis is fundamentally premised on the concept that inaction waives the privilege. However, privileges cannot be waived by virtue of inaction under HIPAA; rather, there must be a requirement or an exception for disclosure of protected health information. As ex parte interviews are not required and cannot be compelled, and no exception allows for them,

---

[7] *Domako*, 438 Mich at 353-354.

they cannot be used in Michigan, and the *Domako* analysis cannot be sustained under the current mandates of HIPAA.

Further, the majority's reliance on and analysis of MCR 2.302(C) is flawed. While *Domako* suggested that MCR 2.302(C) could be used to impose restrictions on ex parte interviews after the waiver of privilege, the majority here suggests that MCR 2.302(C) could be used to authorize the interviews. I respectfully disagree with the majority's conclusion that the rule authorizes ex parte interviews. MCR 2.302(C) contains no language authorizing ex parte interviews, and the majority fails to explain how this rule could be so interpreted given the content of the rule.[8]

---

[8] MCR 2.302(C) provides in pertinent part:

Protective Orders. On motion by a party or by the person from whom discovery is sought, and on reasonable notice and for good cause shown, the court in which the action is pending may issue any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following orders:

(1) that the discovery not be had;

(2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place;

(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters;

(5) that discovery be conducted with no one present except persons designated by the court;

(6) that a deposition, after being sealed, be opened only by order of the court;

17

Finally, my analysis should not be read to suggest or imply that a plaintiff may frustrate legitimate discovery, or engage in the gamesmanship that *Domako* wisely sought to curtail. However, these concerns are effectively addressed in MCR 2.314(B)(2), which provides:

> Unless the court orders otherwise, if a party asserts that the medical information is subject to a privilege and the assertion has the effect of preventing discovery of medical information otherwise discoverable under MCR 2.302(B), the party may not thereafter present or introduce any physical, documentary, or testimonial evidence relating to the party's medical history or mental or physical condition.

While requiring a defendant to conduct discovery by means of a deposition, rather than by an ex parte interview, could not be considered "preventing discovery of medical information," if a plaintiff does assert the privilege during a deposition and thus prevents discovery of medical information, he or she will be precluded from offering testimony at trial relating to his or her medical history or mental or physical condition.

## V. CONCLUSION

I respectfully dissent from the holding of the majority that an ex parte interview can be conducted under MCR 2.302(C) in a manner that is consistent with HIPAA, provided that reasonable efforts have been made to secure a qualified protective order

---

(7) that a deposition shall be taken only for the purpose of discovery and shall not be admissible in evidence except for the purpose of impeachment;

(8) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;

(9) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

18

that meets the requirements of 45 CFR 164.512(e)(1)(v) as set forth in 45 CFR 164.512(e)(1)(ii)(B). Ex parte interviews involve *oral* disclosures of a covered entity's information. The introductory portion of 45 CFR 164.512 specifically limits *oral* disclosures of a covered entity's information to instances "[w]hen the covered entity is *required by this section* to inform the individual of, *or when the individual may agree to*, a use or disclosure permitted by this section . . ." (Emphasis added.) Because an ex parte interview is not required by either this section or Michigan law, nor is there a requirement within 45 CFR 164.512(e) that a patient be informed of an ex parte interview in a judicial proceeding, and plaintiff has not agreed to an ex parte interview in this instance, the subsections of 45 CFR 164.512(e) relied on by the majority cannot be construed as authorizing an ex parte interview that involves the oral disclosure of health information.

I also disagree with the majority's conclusion that Michigan law authorizing ex parte interviews is valid and enforceable after the adoption of HIPAA. First, the physician-patient waiver provisions of MCL 600.2157 and MCL 600.2912f are preempted by HIPAA, because they are contrary to, and not more stringent than, HIPAA. Second, the majority errs in its reliance on *Domako* to support ex parte interviews, because *Domako* was based on Michigan law that has since been preempted by HIPAA. I conclude that ex parte interviews are not allowed in Michigan because HIPAA does not specifically authorize ex parte interviews, and Michigan law authorizing such interviews has been preempted.

Finally, by holding that a party is only required to make *reasonable efforts* to obtain a qualified protective order rather than *actually* having to obtain a court order, the

19

majority fails to recognize that the Michigan Court Rules contain no mechanism for a party to only make a *reasonable effort* to obtain a court order. Requiring only a reasonable effort to secure the order can only mean that the request could be incompletely made, or denied altogether, and an ex parte interview could still take place. The majority's analysis and conclusion are completely at odds with our court rules and undermine the authority of trial courts to enforce the court rules and their own orders, and I cannot agree with such an interpretation.

Accordingly, I would vacate the decision of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

Diane M. Hathaway